(No. 30165.

HAMILTON ENGINEERING COMPANY, INC., Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(WILLIAM W. FRANK, Defendant in Error.)

*Opinion filed November 20, 1947—Rehearing denied Jan. 14, 1948.*

Gunn, J., dissenting.

McNamara, Greene & O'Brien, (John A. Nordstrand, of counsel,) both of Chicago, for plaintiff in error.

Algot R. Johnson, (George W. Angerstein, and Charles Wolff, of counsel,) all of Chicago, for defendant in error.

Mr. Justice Thompson delivered the opinion of the court:

William W. Frank, defendant in error, filed with the Industrial Commission an application for adjustment of claim against the Hamilton Engineering Company, a corporation, plaintiff in error, for compensation for total and permanent disability resulting from injuries sustained September 13, 1944, while in plaintiff in error's employment. As later amended, Conrad F. Becker, State Treasurer, as *ex-officio* custodian of the special fund provided in paragraph (e) of section 7 of the Workmen's Compensation Act, was joined as respondent in the application for adjustment of claim with the employer, Hamilton Engineering Company, as required by the provisions of paragraph (f) of section 8 of the Workmen's Compensation Act. Ill. Rev. Stat. 1945, chap. 48, par. 145.

An arbitrator awarded compensation at the rate of $17.63 per week for a period of $4\frac{4}{7}$ weeks for temporary total incapacity and compensation for the further period of 120 weeks as provided in paragraph (e) of section 8 of the act, for the reason that the injuries sustained caused

the loss of vision of 100 per cent of the right eye. The arbitrator further found that the defendant in error, as the result of a previous and independent operation had suffered the permanent and complete loss of the vision of the left eye, and that he was permanently and totally disabled and entitled to compensation therefor, and that beginning February 3, 1947, defendant in error was entitled to have and receive the remaining portion of the aggregate compensation awarded out of the special fund at the rate of $17.63 per week for a period of 142 weeks and 1 week at $0.35, and thereafter commencing on November 1, 1949, an annual pension of $564, payable in twelve equal installments of $47 each during life, as provided in' paragraph (f) of section 8 of the act, as amended, and that the sum of $45.34 has been paid on account of said injury. The arbitrator also ordered plaintiff in error to pay into the special fund provided in paragraph (e) of section 7 of the act the sum of $100 as provided in subparagraph 20 of section 8(e) of the act.

The Industrial Commission, after a hearing held on plaintiff in error's petition for review, entered an order sustaining and affirming the decision of the arbitrator. Upon application duly made, the superior court of Cook County issued a writ of *certiorari* and the court, having reviewed all questions of law and fact, found that the decision entered by the Industrial Commission on May 3, 1946, was not contrary to the manifest weight of the evidence and was not contrary to law and should be confirmed. We have allowed the employer's petition for writ of error for a further review of the record.

The record discloses the defendant in error, thirty years of age, was employed by the Hamilton Engineering Company and started his employment on July 5, 1944, as a grinder. Besides grinding tools, his work required him to set tools in machines, run a little truck around and at times make deliveries with his motorcycle. He worked

from twelve at noon until eight at night. On September 13, 1944, while cutting off the end of a tool while operating a punch grinder with a cutoff wheel, the wheel broke and several pieces struck the left side of his face breaking the left lens of his glasses and cutting his face below the left eye close to the nose. He was taken immediately to Dr. W. W. Frank, who dressed the left eye but did nothing in the way of treatment to the right eye. Approximately six hours after the accident he was treated at the office of Dr. Powers and was then taken to the Oak Park Hospital, remaining there overnight, where Dr. Powers removed some glass from his left eye. After leaving the hospital he was treated by Dr. Powers until September 20, when he was discharged as requiring no further treatment. He returned to work October 2 and worked at intervals until December 6. During this time, on November 2, Dr. Powers again treated his left eye, discharging him the second time on November 5. Between the date of the accident and December 6, he noticed that the vision in his right eye was blurred and the eye would water. He returned to the office of Dr. Powers on December 6 for treatment of his right eye and was placed shortly thereafter in the Oak Park Hospital for several days. While there, the vision in his right eye became so blurred that he had difficulty walking around. He also received treatment from Dr. Mellin, but the vision in his right eye became progressively worse until very little vision could be obtained even by corrected lenses.

The evidence before the arbitrator and commission consisted of defendant in error's testimony and the testimony of two doctors he called for that purpose. Plaintiff in error called three doctors to testify, one of whom examined defendant in error on the day he received his injuries.

The evidence discloses that prior to his employment with the Hamilton Engineering Company, defendant in error had received X-ray treatments for neural dermatitis,

which condition he had been afflicted with since 16 years of age. He testified his vision had been going down since about 1933 and through 1933 and 1934 it kept getting worse. When asked what caused the condition in his right eye, claimant answered, "Well, from what I gathered, it was from the X-ray treatments." Defendant in error testified in detail as to an operation on his right eye for cataract in the year 1939, that the X-ray treatments were administered around 1932 and 1933, that he had neural dermatitis since 16 years of age, and that the X-ray treatments were for neural dermatitis. He further testified that the operation on the right eye was a success and that he wore glasses during the period between 1938 until the date of the accident on September 13, 1944; that in 1939 he had an operation for a cataract on the left eye, which was not a success, and that he did not have vision in the left eye following the cataract operation.

Dr. Herbert T. Nash, an eye, ear, nose and throat specialist, called as a witness for defendant in error, testified he made an examination of the eyes of defendant in error on two different occasions, the first on February 1, 1945, and the second on February 22, 1945; that the defendant in error was blind in the left eye; that the right eye showed a mild palpebral conjunctivitis, little irritation of the inner side of the lids, numerous strands of capsule remnants in the lower portion of the pupillary area; that the upper portion of the retina was faintly seen through the vitreous haze and a faint view of the optic disc revealed it to be relatively normal. He further testified that the useful vision in defendant in error's right eye at the time of his examination on February 22 was just hand movements at two feet; that the movement of the hand could be observed in the lower field and the upper field was gone. The reading as to his vision in his right eye on that date would be "hand movements at two feet; couldn't count the fingers." A long hypothetical question was also propounded to the doc-

tor to which he answered that he had an opinion, based upon reasonable medical certainty, that there might or could be a causal connection between the state of ill-being contained in the hypothetical question and the injury related in the hypothetical question. He testified in his cross-examination, "I heard in the hypothetical question that this hypothetical individual had a number of X-ray treatments to his eyes; caused cataracts; treatment for neurodermatitis. I don't believe the effect of the X-ray or the rays of the X-ray caused a condition that I found when I examined him that would result in ultimate blindness. Apparently the X-ray treatments were of sufficient strength to produce cataract." This was the only medical witness called by the defendant in error before the arbitrator, but Dr. Orville E. Gordon was called by him before the Industrial Commission.

Doctor Gordon testified there was nothing unusual about a person having a vision of 20/400 following an operation for a cataract without correction; when the lens is removed, there is no ability to focus the light rays, the glasses take the place of the lens, he has to wear them in order to see; that the condition found in each and every case where a cataract has been removed from an eye might not be 20/400, it can be less or more, but they certainly can not see well after they have a cataract removed unless they have glasses.

Doctor Louis Bothman, called as a witness in behalf of plaintiff in error testified he made an examination of William Frank on December 20, 1944, and that the patient had no perception of light; that he could not tell the light was on at all in the left eye, but in the right eye he could see the doctor's hand moving about three feet away, but could not count the fingers. His diagnosis of the right eye was aphakic, meaning the lens was absent; that if there was nothing wrong with the eye but just the lens being absent, the patient never has vision or almost never; that

there are exceptions such as 20/200; that with a glass of correction, they may have normal vision.

Dr. L. R. Mellin, a specialist in eye, ear, nose and throat, testified for the plaintiff in error. He examined the defendant in error on December 15, 1944, and after considerable medical testimony as to the condition of his subject, he stated, "I arrived at a diagnosis of the condition of the right eye. My diagnosis was, primarily, that he had an aphakic eye, that is, an eye without lens; that he had what is commonly called a uveitis—some call it an iridocyclitis—with a healed chorioretinitis. In my examination of that date I determined that he had no vision in the left eye. The right without glasses was below 20/200 and with his glasses the vision ranged anywhere on various dates from 20/200 to 20/40. Then, at one moment, he would see 20/80, the next moment 20/60."

Dr. F. E. Powers, in behalf of plaintiff in error, testified he examined defendant in error on September 13, 1944, the date of the accident, when he was taken to his office suffering from the injuries received from the broken cogwheel which struck him in the face on the left side. He testified defendant in error was blind in the left eye but was not service connected because the eye had been blind for some years following a cataract operation; that the right eye at that time was not injured, or showed no effects of the trauma at that time, and the vision in the right eye when he saw him was 20/400 without his glasses and with his glasses on it was 20/20. He further testified that assuming the eye was normal, except for a cataract operation, and in the operation the lens was removed, the vision might be less than 20/200 after the date of the removal of the lens. On cross-examination, he testified, "When I said he had an aphakic right eye, that simply means the lens may have been destroyed or removed. So that after a cataract operation, the man would no longer have a lens in the eye in which the cataract was removed.

A person fitted with glasses and after a lens is placed in front of the eye does not necessarily have 20/20 vision. In this particular case the man had 20/20." The doctor further testified that he again examined defendant in error on December 6, an interval of approximately thirty days since he had last seen him, and in that time uveitis had developed in the right eye but he had no idea what could have caused this condition to develop.

While this evidence as adduced indicates considerable conflict as to just how much vision remained in the right eye after the operation for cataracts, it is apparent that by the last injury he suffered the permanent and complete loss of vision in this eye and that the cataracts were caused by the eye being injured in the use of X-ray treatments for neurodermatitis. This is·shown by defendant in error's testimony and the testimony of his own witness, Dr. Nash, who testified that from his examination the X-ray treatments were of sufficient strength to produce cataract. The injury to the eye by the use of X-ray treatments for neuro-· dermatitis produced cataracts which necessitated an operation for their removal, resulting in a certain loss of vision in the right eye. Although the evidence clearly shows a former injury, no finding was made in that respect, either by the arbitrator or the commission.

It is plaintiff in error's contention the former injury to the eye should have been deducted from the award made for the subsequent injury, and that the decision and award of the Industrial Commission is contrary to sub-paragraph 17½ of section 8(e) of the Workmen's Compensation Act, which is as follows: "In computing the compensation to be paid to any employee who, before the accident for which he claims compensation, had before that time sustained an injury resulting in the loss by amputation or partial loss by amputation of any member, including hand, arm, thumb or fingers, leg, foot, or any toes, such loss or partial loss of any such member or the sight

of an eye shall be deducted from any award made for the subsequent injury, and for the permanent total loss of use or the permanent partial loss of use of any such member for which compensation has been paid, then such loss shall be taken into consideration and deducted from any award for the subsequent injury."

In order to properly determine the issues presented here it will first be necessary to determine whether or not subparagraph 17½ is applicable in the instant case as is contended by plaintiff in error. We do not find that subparagraph 17½ of section 8(e) has heretofore been construed by this court as it pertains to the loss of the sight of an eye, although in the case of *Cinch Manufacturing Co.* v. *Industrial Com.* 397 Ill. 420, it was said, "The plain language of the act shows a clear intention that in computing compensation to an employee for accidental injury or loss of a member arising out of and in the course of his employment, the employer is entitled to have deducted from the compensation awardable for such later injury, the amount such injured employee would have been entitled to be paid, whether compensable or not, for an injury or loss which occurred prior to the last injury or loss for which compensation is sought, for a permanent total or permanent partial loss of the use of any designated member for which compensation had been paid. Such loss shall be taken into consideration and deducted from any award for the last injury to such member. In other words, the intent as expressed in the act is to limit an employer's liability to pay only for the loss of ability to work which is the direct result of the last injury or loss. It is true, as argued by defendant in error, that such a deduction in a case where no compensation has been paid for the first injury must be estimated, unless the first injury is to be considered a complete loss."

The above case pertained to a former amputation of the left hand of one Edward J. Deeniham when he was

nine years of age, and who later was employed by Cinch Manufacturing Company and there received an injury to the same arm which resulted in a complete loss. This case, of course, was encompassed with that class which is referred to in subparagraph 17½ as loss by amputation or partial amputation. It is apparent from the statute and from that case that the requirement for deducting the loss by amputation or partial amputation of any member from any award made for the subsequent injury does not include as a condition precedent that any compensation be paid for the former injury in order to entitle the employer to deduct the former loss from any award for the subsequent injury. In the language of said subsection, which includes loss by amputation of any member, including hand, arm, thumb or fingers, leg, foot, or any toes, such loss or partial loss of any such member or the sight of an eye shall be deducted from any award made for the subsequent injury. This clearly indicates that the loss of the sight of an eye is included in the classification as shown in the amendment which pertains to the loss by amputation or partial amputation of any member for which such loss may be deducted.

Subparagraph 17½ consists, in its language, of two parts. The first refers to the loss or partial loss by amputation or the sight of an eye. The second part, connected with a conjunction, refers to the total loss of use or the permanent partial loss of use of such member. The loss of an eye, in our judgment, comes within the provisions of the first part of the above section.

In the case of *Caterpillar Tractor Co.* v. *Industrial Com.* 397 Ill. 474, it was observed that in the class of cases where deductions are authorized, the prior injury being either an amputation, compensable or otherwise, or a loss of use for which compensation has been paid, is always capable of definite and absolute proof. We find no difficulty in this respect as pertains to the loss of an eye over

the loss of a hand, arm, leg, etc., for we find it is provided in subsection 8(e)(17) "For the permanent partial loss of use of a member, or sight of an eye, but not including the hearing of an ear, fifty percentum of the average weekly wage during that proportion of the number of weeks in the foregoing schedule provided for the loss of such member or sight of an eye which the partial loss of use thereof bears to the total loss of use of such member or sight of eye." It, of course, would follow that the evidence should show the percentage of loss, but in the case of a leg or an arm, the evidence must show the extent of the particular amputation. As was said in the *Caterpillar case,* the prior loss can be computed at the fixed statutory rate for compensable injuries or it can be evaluated by a consideration of all the facts and circumstances of the particular case. The Industrial Commission should have allowed a deduction as to any prior loss to the eye as disclosed by the evidence.

Plaintiff in error contends that it is entitled to a deduction due to the former loss of vision in the eye of defendant in error and that, as the evidence reveals he was industrially blind and so remained at the time of the last injury, there could be no loss. The evidence reveals that the duties of defendant in error, which he was fulfilling, were those of a grinder, sharpening tools; that he also made deliveries on a motorcycle and that he was able to determine that a tool was sharp by looking at it; and further, the evidence discloses he had operated the motorcycle in the nighttime and particularly, on the night the accident occurred.

We hardly see how it could reasonably be said that, although defendant in error was performing the duties of his employment as above shown, he was blind because medical testimony tended to show he had only a vision which rated industrial blindness. We cannot agree with such a strange anomally,—of a man, although he is per-

forming duties which require the constant use of his eyes, yet is blind. Neither do we think the evidence supports such theory. The legislature has not seen fit to provide or establish any standard or table with which to measure the extent of vision, and their use and reference thereto are to be considered only as elements of the evidence. This court, of course, is not bound by the practice or custom of the Industrial Commission or by any decision of the Industrial Commission, either as to fact or law, and neither can the Industrial Commission by any rule or custom extend the substantive provisions of the Workmen's Compensation Act. *Ervin* v. *Industrial Com.* 364 Ill. 56; *Zurich Accident Ins. Co.* v. *Industrial Com.* 325 Ill. 452.

We held in the case of *Mark Mfg. Co.* v. *Industrial Com.* 286 Ill. 620, where the employee had previously lost a part of a finger, and then in a subsequent injury on which the claim was based suffered complete loss of the use of his hand, "Though the defendant in error had previously lost a part of one finger he had the use of his hand, with a capacity somewhat reduced by reason of the defect. The fact that his hand was not perfect did not render its loss any less complete. As the result of his injury he has totally lost the use of the hand, which he previously had, and under the statute he is entitled to compensation for that loss. (*Wabash Railway Co.* v. *Industrial Com. ante,* p. 194; *In re Branconnier,* 223 Mass. 273; *Schwab* v. *Emporium Forestry Co.* 216 N. Y. 712.) The fact that he might have recovered for the first injury did not reduce the amount of compensation to which he is entitled for the loss of the use of his hand."

In the case of *Juergens Bros. Co.* v. *Industrial Com.* 290 Ill. 420, it was contended by the plaintiff in error that one Kaage had not suffered a total loss of vision but had only lost the power of accommodation which, by the use of glasses, he might regain. The evidence in that case disclosed that with the use of correcting glasses or lenses

the applicant could see clearly with the injured eye at a fixed distance. There we announced this rule: "We believe the true rule should be, that where, as here, the employee has lost all practical use of an eye, which practical use cannot be restored so long as he has his other eye, such amounts, in effect, to the loss of the eye, and that compensation for such loss should be paid to such employee under paragraph (e) of section 8 of the Compensation act."

In the case of *Heaps* v. *Industrial Com.* 303 Ill. 443, we held the meaning of "permanent loss" of use of a member, as used in the Workmen's Compensation Act, means the taking away of the normal use of the member; and the ability to do some work by aid of a mechanical device is not inconsistent with complete loss of the use of an eye or a hand.

In the case of *Chicago Bridge and Iron Co.* v. *Industrial Com.* 316 Ill. 622, we said, "There is no requirement in the act that the eye be perfect, nor is there any provision for reducing the amount of compensation in the proportion the vision is defective. The compensation fixed by the act is for the loss of a member of the body, and the same compensation is due and payable whether the eye lost is the eye of a youth or of an old man, an eye with perfect vision or one imperfect by reason of natural defects or a previous injury."

These cases were decided before the amendment of 1927 adding subparagraph 17½ of section 8(e), which provided for deductions in cases of prior injuries; but while the employer is entitled to a deduction, this did not, in any manner, change the present rules laid down as heretofore announced as to an employee being entitled to compensation when, in his employment, he has lost all practical use of an eye.

We are further of the opinion the evidence sufficiently discloses that the defendant in error had previously suffered

the loss of his left eye, and that on September 13, 1944, he suffered the permanent and complete loss of the use of his right eye, and is entitled to receive compensation as provided under the terms and provisions of paragraph (f) of section 8 of the Workmen's Compensation Act; and that plaintiff in error in whose employment the last independent accident occurred is liable only for the loss or permanent and complete loss of the use of the member occasioned by the last independent accident, including $100 to be paid into the special fund, less the deduction for former injury as found by the commission. The remaining portion of the compensation for permanent and complete disability, including the life pension, should be paid out of the special fund created under the provisions of paragraph (e) of section 7 of the Workmen's Compensation Act. The $4\frac{4}{7}$ weeks, which defendant in error alleged as the period of temporary disability, seems to be incorrect, on which payment of $45.34 has been paid, which represents only $2\frac{4}{7}$ weeks of temporary total disability.

The employee, Franks, is entitled to no award for temporary incapacity, as such an award would be inconsistent with an award for permanent total incapacity, and with the provisions of paragraph (f) of section 8, which provides that in case of complete disability which renders the employee wholly and permanent incapable of work, the payment of the award shall commence on the next day after the injury. Hence, the award in this case is incorrect in awarding $4\frac{4}{7}$ weeks' temporary compensation, and also incorrect in making no deduction from the 120 weeks awarded for the loss of the right eye previously suffered.

We find, of this total award of $4700, the employee, Frank, shall be paid by his employer 120 weekly installments of $17.63, or a total of $2115, (subparagraph 16, section 8(e),) minus such partial loss of sight of his right eye as was sustained by him prior to his accidental injury of September 13, 1944. (Subparagraph $17\frac{1}{2}$, sec-

tion 8(e).)   The balance of this total award of $4700, after deducting therefrom the amount to be paid by his employer, shall be paid by the State Treasurer from the special fund.   Ill. Rev. Stat. 1943, chap. 48, par. 145, sec. 8(f).

Since the extent of the prior injury with which we are here concerned was not determined or fixed by the Industrial Commission, which, after found and determined, would change the award in this case, the judgment of the superior court of Cook County and the award of the Industrial Commission are reversed and the cause is remanded to the superior court with directions to further remand the cause to the Industrial Commission for further hearing, including the introduction of additional evidence on the issue of the extent of the prior injury and the computation resulting therefrom, and for the entry of a decision for an award in conformity with the views herein expressed.

*Reversed and remanded, with directions.*

Mr. JUSTICE GUNN, specially concurring:

I concur with the majority opinion in the reversal of this case because of the error of the commission and court in making no deduction. from the award because of the previous loss of respondent's left eye.   However, I do not agree with the opinion in the application of paragraph $17\frac{1}{2}$ of the Workmen's Compensation Act to the award for the loss of the right eye.

The question on which I differ is whether the award for the loss of the right eye is subject to deduction under the statute.   The provision of the first clause of paragraph $17\frac{1}{2}$, which, as to the eye, reads: "In computing the compensation to be paid to an employee who, before the accident for which he claims compensation, had before that time sustained an injury resulting in a loss by amputation * * * of any member including hand * * * such loss of member * * * *or* the sight of an eye,

shall be deducted from the award made for the subsequent injury * * *." Examining this portion of paragraph 17½, it is perceived that the loss by amputation of a hand for instance is placed upon the same basis as the loss of the sight of an eye. Respondent had not suffered the loss of the sight of his right eye before the accident. He could see dimly without glasses, and well enough with them to operate a machine and to ride a motorcycle. He had an injured or diseased eye, but could see, and, therefore, did not come within the first portion of paragraph 17½, which requires the loss of sight of an eye.

The second clause of paragraph 17½ reads: "In computing compensation to be paid to an injured employee * * * for the total permanent loss of use or the permanent partial loss of use of any such member [eye] for which compensation has been paid, then such loss shall be taken into consideration and deducted from any award for the subsequent injury." This language is clear. To authorize any deduction from the award for the loss of use the previous injury must have been compensated. There has been no previous compensated injury to an eye, and hence, respondent does not come under the concluding portion of paragraph 17½.

I conclude as follows: (1) There could be no diminution of the award for the loss of the right eye because he had not previously lost the sight thereof, as is required by statute; and (2) there could be no diminution of the award for the loss of use of the right eye because he had not suffered a previous injury for which he had been compensated.

The case should be reversed, but should not require diminution of the award for the loss of the right eye.