(No. 32082.—

WILLIAM G. LAMBERT, JR., Plaintiff in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(CATERPILLAR TRACTOR COMPANY, Defendant in Error.)

*Opinion filed March 20, 1952.*

HENRY KNELLER, of Peoria, for plaintiff in error.

MILLER, WESTERVELT, JOHNSON & THOMASON, of Peoria, (DAVID A. NICOLL, of counsel,) for defendant in error.

Mr. JUSTICE MAXWELL delivered the opinion of the court:

This court granted a writ of error to review the judgment of the circuit court of Peoria County denying compensation to William G. Lambert, Jr., hereinafter called petitioner, for an injury to his left eye, sustained while in the employ of the Caterpillar Tractor Company, hereinafter called respondent.

The facts are not in dispute. It was stipulated that the parties were operating under the Workmen's Compensation Act; that the relationship of employer and employee existed; that the petitioner sustained accidental injuries on February 8, 1949, which arose out of and in the course of his employment; that notice was given the employer and demand for compensation was made upon the employer within the time provided by statute. It was also stipulated that petitioner's earnings for the next preceding year were $2600 and the average weekly wage was fifty dollars; that petitioner at the time of the injury was seventeen years of age and had no children under sixteen; that first aid, medical, surgical and hospital services had been provided by respondent and that the sum of $130.93 had been paid to

petitioner by respondent for the temporary total disability which resulted from the accident.

The petitioner testified before the arbitrator that on the date of the injury he was walking down an aisle in respondent's plant when he saw some other employees coming toward a switch with some cars; that he saw a four-by-four underneath the wheels of the cars; that he noticed a piece of wire which was tied at one end and when he jerked on it the end flew back and struck his eyeglasses, breaking the left lens and injuring that eye. This was all the testimony. Following this testimony, the parties entered into the following stipulation:

"It is hereby stipulated and agreed by and between the petitioner and respondent, through their respective counsel, as a matter of record in this cause, that the petitioner was examined by John M. DeMoure, optometrist, on September 1, 1948, and on that date said petitioner had an uncorrected and naked vision of 20/500 in the left eye, said vision being the result of a congenital condition and not due to injury. The vision of the left eye at that time was correctable with lens to 20/20.

"It is further stipulated and agreed that on September 1, 1948, the petitioner had an uncorrected and naked vision of 20/400 in the right eye, correctable with glasses or lens to 20/20. The petitioner, William Lambert, Jr., prior to the accidental injury on February 8, 1949, had the use of both eyes with glasses or correctable lens.

"It is further stipulated and agreed that after the accidental injury on February 8, 1949, said petitioner was examined and treated by several doctors skilled in the field of ophthalmology.

"It is further stipulated and agreed that said petitioner was examined on November 22, 1949, at which time the vision in the right eye was 20/400 and correctable with glasses or lens to 20/20. Vision in the left eye was found to be 20/500 and petitioner with the left eye could dis-

tinguish hand movements without correcting glasses or lens. The left eye had a keyhole pupil with some scarring of the cornea alone. There was an aphakia with secondary membrane. Vision in the left eye could be improved and corrected with a strong cataract lens to 20/50.

"It is further stipulated and agreed that said petitioner following accidental injury on February 8, 1949, was suffering from perforation of the left eye with aphakia following lens injury. The left eye of petitioner must be considered industrially blind since the corrective lens is of such strength that petitioner would be unable without difficulty to coordinate the use of both eyes together without diplopia.

"It is further stipulated and agreed that with the right eye of petitioner entirely closed or naked without correction, the petitioner has and would have the use of the left eye alone with a corrected vision of 20/50."

The foregoing was all of the proceedings of record upon the hearing before the arbitrator. Upon this record, the arbitrator found all the jurisdictional matters in favor of the petitioner and awarded compensation for 75 per cent loss of sight of the left eye (in addition to the short period of temporary total disability which had been paid by the employer.) Upon review by the Industrial Commission, it made a finding of facts in accord with the arbitrator except that the commission found "that the claimant did not sustain any permanent disability which was caused by or related to the accidental injuries sustained on February 8, 1949." Petitioner proceeded by *certiorari* to the circuit court of Peoria County and that court entered its order quashing the writ, dismissing the petition and confirming the decision of the commission.

The petitioner contends that he has sustained a permanent compensable injury to his left eye; that the injury destroyed the accommodation or co-ordination of both eyes; that the injury decreased the corrected vision of the left

eye; that the decision of the arbitrator was correct; that the Industrial Commission erred in finding that no permanent disability was caused by or related to the accident; and that the circuit court erred in confirming the decision of the commission.

The respondent does not deny that the accidental injury resulted in a change in the structure of petitioner's left eye; admits that the accommodation of both eyes has been affected; admits that the corrected vision of the injured eye has been decreased; but contends that all these changes are based on the functioning of petitioner's eyes with corrected vision, by the use of glasses; that so far as the uncorrected or naked vision of petitioner's left eye is concerned it is the same as it was before the injury; and that the uncorrected or naked vision of the eye, without the use of glasses, lens, or artificial appliance is the only basis for determining injury to the eye under the provisions of the Workmen's Compensation Act; and that since the uncorrected vision of petitioner's left eye is no worse than it was before the injury, the injury is not compensable under the act.

These contentions squarely present to this court, for the first time, where the injury is to corrected vision, the question whether the corrected vision, by the use of glasses, or uncorrected, naked vision without artificial appliance of any kind, shall be the basis for determining loss of sight or loss of use of the eyes under the provisions of our Workmen's Compensation Act.

The applicable sections of the act, as in effect on the date of this accident, provided as follows:

"For the loss of the sight of an eye, or for the permanent and complete loss of its use, 50 percentum of the average weekly wage during 120 weeks." Ill. Rev. Stat. 1947, chap. 48, par. 145, sec. 8(e)16, p. 1681.

"For the permanent partial loss of use of a member or sight of an eye * * * 50 percentum of the average

weekly wage during that proportion of the number of weeks in the foregoing schedule provided for the loss of such member or sight of an eye which the partial loss of use thereof bears to the total loss of use of such member or sight of eye." Ill. Rev. Stat. 1947, chap. 48, par. 145, sec. 8(e)17, p. 1681.

It is apparent from the stipulation herein, based on the examinations of the optometrist, that prior to the accident petitioner had defective vision in both eyes, due to a congenital condition and not as a result of any accident, which defective vision could be corrected to normal by the use of glasses. It is equally apparent that after the accident, petitioner had a defective vision which could not be corrected to normal by the use of glasses although, as measured by the usual and accepted optometric methods, the naked and uncorrected vision of the injured left eye was measured the same. The respondent therefore contends that the injury to petitioner's left eye was not an injury to the naked vision of the eye but injured only the ability of the eye to respond to corrective measures and that, under our statute, and previous decisions of this court, such injury is not compensable.

That the accident occurred is not denied. That petitioner sustained a permanent injury to his left eye, which destroyed the crystalline lens of that eye, reduced its corrected vision from 20/20 to 20/50 and seriously injured or destroyed the ability of that eye to accommodate, is stipulated. In fact, it is stipulated that petitioner's left eye must be considered industrially blind since the corrective lens necessary is of such strength that petitioner would be unable without difficulty to co-ordinate the use of both eyes together without diplopia, commonly known as "double vision." It is obvious that petitioner has sustained a serious and permanent injury to his sight which greatly affects his industrial ability and value. The only question in this case is whether that injury is compensable under our statute.

The respondent contends that, since our statute is silent as to the use of glasses or lens to be used as an artificial appliance in determining loss of sight or loss of use of an eye, therefore it may be presumed that the legislature did not intend that corrective appliances should be considered. Respondent further contends that *Hamilton Engineering Co.* v. *Industrial Com.* 399 Ill. 30, *Juergens Bros. Co.* v. *Industrial Com.* 290 Ill. 420, and *Heaps* v. *Industrial Com.* 303 Ill. 443, have established the rule in this State that corrected vision is not a factor in determining loss of sight or loss of use of an eye, but naked, uncorrected vision, alone, is considered, and that in the instant case the petitioner was industrially blind in his left eye before the accident, was no worse after the accident, and, therefore, there could be no compensable loss.

Respondent's contention, that since the legislature is silent as to corrected vision it should be presumed it was the intention to consider only naked vision, can and will be quickly dissipated. Laws of the type of compensation acts should not be interpreted and applied with the rigidity of constitutional provisions but should be interpreted and applied in a practical and common-sense manner to accomplish the ultimate purpose of the act. It is a matter of common knowledge that there are many useful and valuable employees whose naked uncorrected vision would leave them "industrially blind." A presumption that the legislature intended to deny them the protection of compensation for injuries to their eyes would hardly be practical and common-sense, and it would, in our opinion, be absurd.

Respondent contends that the cases it cites and relies upon have, by judicial interpretation, established the rule in this State that corrected vision is not a factor in determining loss of sight or loss of use of an eye, but naked, uncorrected vision, alone, is considered. We have carefully examined those cases and cannot agree with that contention. The specific question here presented has never been

squarely passed upon by this court and we have found no previous pronouncement which we feel is determinative in this case.

In *Hamilton Engineering Co.* v. *Industrial Com.* 399 Ill. 30, the petitioner had suffered from neural dermatitis since he was a child and his vision started failing more than 10 years prior to the accident. He had been taking X-ray treatments and had a cataract operation on both his eyes. The left-eye operation was not a success and he lost his sight in that eye. The operation on the right eye was a success and by the use of glasses, according to his medical testimony, he had normal 20/20 vision in the right eye before the injury, and without his glasses his vision in that eye was 20/400. The court there found that in the accident he sustained total and permanent loss of vision of the right eye. The arbitrator found that petitioner sustained 100 per cent loss of vision of the right eye, and, since he had previously lost the vision of his left eye by an operation, that he was, as a result of this accident, permanently and totally disabled and entitled to compensation therefor. The respondent contended that under subparagraph 17½ of section 8(e) of the Workmen's Compensation Act, the former injury to the right eye (the cataract operation that injured the eye, which injury was corrected by his glasses) should have been deducted from the award for the loss of the right eye and that, since he was "industrially blind" in that eye, without glasses, before the accident, there could be no loss. The court rejected this contention and found petitioner entitled to compensation for 100 per cent loss of the right eye, less an amount to be determined and deducted for the prior injury, and an award for total and permanent disability. The holding of the court was that, even though petitioner was "industrially blind" in his one remaining seeing eye, he still was entitled to an award for total and permanent disability, deducting therefrom the amount he

would have been entitled to for the prior injury to this eye. We cannot interpret this decision as holding that corrected vision is not considered under our compensation act, but it certainly does hold that a recovery can be had even where the eye was "industrially blind" at the time of the injury.

In *Juergens Bros. Co.* v. *Industrial Com.* 290 Ill. 420, petitioner wore no glasses before his injury. After an injury to one of his eyes, a cataract developed and was removed by an operation. In the operation, the lens of the eye was removed and thereafter the power of accommodation of the eye was destroyed. By the use of glasses, petitioner could have normal vision in this eye, alone, at fixed distances, but varying distance required different glasses and in no event would the injured eye accommodate with his normal eye. The respondent contended that if petitioner should ever lose his good eye, he would have some use of his injured eye and therefore had not lost all sight of his injured eye. The court refused to consider "the remote possibility of Kaage [petitioner] losing his good eye," and said "The application of laws of this character should not be made to depend upon fine-spun theories based upon scientific technicalities," found, for all practical purposes, that petitioner had lost his eye, and sustained the award made on this basis. On page 424, the court said, "We believe the true rule should be, that where, as here, the employee has lost all practical use of an eye, which practical use cannot be restored so long as he has his other eye, such amounts, in effect, to the loss of the eye, and that compensation for such loss should be paid to such employee under paragraph (e) of section 8 of the Compensation act." The petitioner in this case had, under this reasoning of the court, lost all practical use of his eye, with or without glasses, and the court's decision would have been the same whether it considered naked or corrected vision of the injured eye.

The third and last case cited by respondent is *Heaps* v. *Industrial Com.* 303 Ill. 443. In this case, petitioner was blind in his left eye before the accident in which he sustained injury to his right eye. After the injury, his right eyelid became permanently paralyzed and he could see only by propping the eyelid open with plasters or other artificial means, and then very little. His sight continued to grow worse and at the time of the trial he could not distinguish a man ten or fifteen feet away. The court, in sustaining the award for total and permanent disability said, at page 447 of the opinion: "It is not necessary, to sustain the award in this case, to show total and complete loss of sight under all circumstances. He is entirely blind at all times, as already stated, except when he uses artificial means to keep his eye open. When this is done he only has 12/200ths vision, which amounts practically to blindness, and that condition is morally certain to grow worse," and, further, " 'Permanent loss' as used in the Compensation act concerning the loss of an eye, limb, etc., means the taking away of the normal use of the member." It was evident in this case that the "normal use" of petitioner's injured eye was taken away, whether the artificial aid used is taken into consideration or not.

We cannot agree with respondent's contention, in the case at bar, that these three cases establish the rule in this State that naked, uncorrected vision, alone, is considered under our Workmen's Compensation Act. If the court had followed that rule in the *Hamilton Engineering Company case* there would have been no award at all for the right eye because that eye was "industrially blind" before the injury. In the *Juergens Bros. Company case,* under the reasoning of the court and the nature of the petitioner's injury, the decision should have been the same whether naked or corrected vision was considered, and in the *Heaps case* the petitioner was "practically blind," had sustained "permanent loss" by the taking away of "the normal

use" of his eye, even with the use of the artificial aids, and was totally and permanently disabled in either event. We do not believe these cases are sufficiently specific and clear-cut to establish a categorical rule of such vast importance to industrial workers and employers. We consider the specific question here involved as being squarely before this court for the first time.

The general question, whether corrected vision is a factor in determining the extent of eye injuries, has been before the courts of other States and the decisions are in sharp conflict. This conflict is clearly shown by the cases and annotations appearing in 8 A.L.R. 1322, 24 A.L.R. 1462, 73 A.L.R. 706, 99 A.L.R. 1492, 142 A.L.R. 816. A study of these cases reveals that they cannot be reconciled and the courts are not in harmony on this question. Some of the differences are due to variation in the wording of the statutes. Many of the differences are due to the court's interpretation of the purpose of the statute, *i.e.,* if the purpose of the statute is to compensate in a specific amount for a specific loss, naked vision, alone, should be considered, but if the purpose of the statute is to compensate for loss of earning power, then corrected vision should be a factor. Another cause of the conflict, not only between the different jurisdictions but even within the same jurisdiction, lies in the inclination of the courts to do justice in the case then before it with no intention of establishing a rule binding in all other cases. This is well illustrated by two Minnesota cases, *Foster v. Schmahl,* (1936) 197 Minn. 602, 268 N.W. 631, and *Livingston* v. *St. Paul Hydraulic Hoist Co.* (1938) 203 Minn. 62, 279 N.W. 829. In the first case the court said the employee was not entitled to total permanent disability where he was industrially blind without glasses but was not industrially blind with glasses; while, in the second case, the same court said the extent of partial loss of vision sustained through an injury to an eye should be determined without regard to possible correction by the

use of glasses. The court, in the latter case, distinguished the cases by saying the first involved a lessened earning ability while the latter involved a specific injury to a member. The State of Idaho apparently follows the same reasoning. *McDonald* v. *State Treasurer*, (1932) 52 Idaho, 535, 16 Pac. 2d 988, and *Kelley* v. *Prouty*, (1934), 54 Idaho, 225, 30 Pac. 2d 769.

The real difficulty, and one of the causes of the lack of harmony in the authorities, lies in the fact that neither rule is adequate to cover all cases. If naked vision, alone, is considered, the worker with corrected vision is not adequately protected, and if corrected vision, alone, is considered, the worker with uncorrected vision is not fully protected. In the first instance, the loss of an eye "industrially blind" with naked vision, but normal with correction, would not be compensable; in the second, an injury rendering a normal eye industrially blind would not be compensable if it could be corrected to normal by the use of glasses.

Space does not permit the citation of all the authorities we have examined but the following are typical of the two views:

In *Burdine's, Inc.* v. *Green*, 150 Fla. 361, 7 So. 2d 460, the court refused to take corrected vision into consideration and stated as its reasoning that, "It could not be successfully argued that one who must wear glasses because of permanent injury to an eye is not handicapped and is as free in the use of his eyes as one who does not require artificial lenses to strengthen his vision."

In *McCullough* v. *Southwestern Bell Telephone Co.* 155 Kan. 629, 127 Pac. 2d 467, the court refused to take corrected vision into consideration and there said, "Where the statute does not specifically or indirectly require a holding that the use of corrective lens must be taken into account the great weight of authority is that the compensation should be computed without the use of such corrective lens."

Expressing the contrary view, the court in *Foster* v. *Schmahl,* 197 Minn. 602, 268 N.W. 631, said, "Without the aid of glasses, appellant is industrially blind for all practical purposes. However, with due deference to eminent authority to the contrary [citations], it seems unreasonable to hold that a man is industrially blind merely because he may be so without the aid of glasses, especially in view of their very common and extremely convenient use. A large percentage of our populace, both in the professions and in the trades, must resort to the use of glasses even in the normal course of events in order to enable them to carry on their work. Such people are not totally disabled by any means. There can be no plausible reason for so considering a person who has been forced to wear glasses as the result of an industrial accident."

The petitioner has cited the case of *Stone* v. *Industrial Com.* (Ohio Common Pleas) 93 N.E. 2d. 67. In this case the petitioner, due to a previous injury, had 2 per cent uncorrected vision in his left eye which, with glasses, was corrected to 83.6 per cent vision. He sustained an injury to this eye which necessitated its enucleation. The applicable statute provided that no compensation would be awarded for loss of vision of less than 25 per cent. The respondent contended that petitioner had only 2 per cent vision in his left eye before the accident, and, therefore, he could not lose 25 per cent of the vision as required by statute, that he was industrially blind before the accident, and that the injury was not compensable. The commission found that petitioner was industrially blind before the accident and suffered no compensable loss. The court overruled the commission and awarded compensation. In its opinion the court said, "In this day of eye strain it is common knowledge that without glasses many persons whose vision is practically normal with glasses, would fall way below the 25 per cent of normal vision without them. Athletes, who are stars, may use contact lenses or well-

guarded glasses and but for these, would be hopeless in their field of endeavor. The same with doctors, scientists, accountants and peoples of all trades and professions. To say that one who has a normal vision of only 2 per cent but a corrected vision of 83.6 is industrially blind, is an absurdity. The benefits of science and medicine are meant for the enjoyment of the people, and where by a correction through scientific adjustment a person is blessed with greater sensory capabilities, those persons should be recognized for those greater sensory powers rather than to relegate them to an inferior status to which they must readily descend without corrective measures. This court is of the opinion that the claimant, Melvin Stone, should be given the advantage of his gains physically by correction and when the advantage is taken away from him by an injury in the course of and arising out of his employment, he should be compensated."

In the case at bar we are required to determine which of the two rules should be applied, under our Workmen's Compensation Act, where the injury is to an eye which is industrially blind without correction but normal with correction. As pointed out above, our statute is silent on this question. We find nothing in the act which either expressly or indirectly indicates whether corrected or uncorrected vision shall be used in determining the extent of eye injuries compensable under the act, and it therefore is our duty to interpret and apply the act in a practical and common-sense manner to accomplish the ultimate purposes of the act.

The theory behind compensation acts is that industry rather than society should care for its wrecked manpower. That care, whether it be in the form of a specific allowance for specified injuries, or whether it be based on reduced earning power, is to remunerate the injured party for his financial loss through the reduction of his industrial value. Every injury, sustained in the course of the employee's

employment, which causes the employee such a loss should be compensable.

In the instant case, the petitioner had normal vision with glasses prior to the injury. The employer had employed him with his corrected vision and he was performing his work satisfactorily. The petitioner's corrected vision was just as valuable to both petitioner and his employer as was the uncorrected vision of his co-employee. The destruction of petitioner's corrected vision would be the same industrial loss to petitioner and the same loss to industry as the vision of any other employee. The cost to the employer to reimburse petitioner for his loss is no greater than in the case of any other employee who is doing the same work and receiving the same pay. The vision which petitioner had prior to the accident was the vision he depended upon for his industrial value and ability. That was the vision he was selling his employer and the employer was receiving benefits from that vision equal to any other employee in the same work. The injury which petitioner sustained to that vision, (and the reduction in its industrial value,) was petitioner's actual damages by reason of the accident.

Fully aware of the eminent authority to the contrary, it is our opinion that the injury here sustained by petitioner should be compensable and that the basis for determining the extent of that injury should be the difference between the amount of corrected vision which he possessed prior to the injury and the highest corrected vision of which his injured eye was capable after the injury. We believe an employee with corrected vision should be given full advantage of such correction and that industry should be responsible to him for the vision which he is using for the benefit of industry.

The arbitrator found the injury compensable and found the extent of the injury to be 75 per cent permanent loss of sight of the injured eye. The extent of the injury is a

question of fact, the arbitrator's finding is not manifestly against the evidence, and we are not disposed to question that finding.

The judgment of the Circuit Court of Peoria County confirming the decision of the Industrial Commission is reversed and this cause is remanded to that court, with directions to enter judgment in favor of the petitioner and against the respondent in accordance with the finding of the arbitrator.

*Reversed and remanded, with directions.*