(No. 50435.—

MOTOR WHEEL CORPORATION, Appellant, v. THE INDUSTRIAL COMMISSION *et al.*—(Rudolpho C. Escatel, Appellee.)

*Opinion filed Jan. 26, 1979.—Rehearing denied March 30, 1979.*

232

RYAN, J., too no part.

Dunn & Hayes, of Morris, for appellant.

Kevin Kelly, of La Salle (Sidney Z. Karasik, of Chicago, of counsel), for appellee.

MR. JUSTICE CLARK delivered the opinion of the court:

This is an appeal from the judgment of the circuit court of La Salle County which confirmed the Industrial Commission's denial of the petition of the respondent, Motor Wheel Corporation. The petition was filed under section 19(h) of the Workmen's Compensation Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.19(h)). The claimant, Rudolpho C. Escatel, had filed an application for

adjustment of claim on September 1, 1970, for injuries he received to his eyes on August 15, 1968, and on July 16, 1970, in the course of his employment by Motor Wheel. Prior to his injury, claimant did not wear glasses and had uncorrected vision of 20/25 in both eyes; subsequent to the injury, he had uncorrected vision of 20/200. (Claimant testified the later injury occurred on July 15, 1970, but his application and the Commission's finding place the date of injury on July 16, 1970.) The arbitrator found the claimant sustained "permanent and complete loss of vision of *** [each] eye to the extent of 100%" under paragraph 18 of section 8(e) of the Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.8(e)(18)). On March 27, 1972, the Commission affirmed. Motor Wheel did not appeal. Within the required 30 months of the Commission's affirmance (Ill. Rev. Stat. 1973, ch. 48, par. 138.19(h)), on August 15, 1974, Motor Wheel filed its section 19(h) petition with the Commission, alleging a diminution of claimant's disability.

The first issue is whether an award for permanent and complete loss of vision of both eyes pursuant to section 8(e)(18) of the Act may be reviewed under section 19(h) of the Act. Claimant argues that the 100% loss of vision under section 8(e)(18) is a "presumptive complete disability" which precludes review, under section 19(h), for diminution of the injury absent a material change. In support of this, claimant cites *National Lock Co. v. Industrial Com.* (1975), 62 Ill. 2d 51, and *Scandroli Construction Co. v. Industrial Com.* (1973), 54 Ill. 2d 395.

We disagree. Section 19(h) of the Act clearly provides:

> "However, as to accidents occurring subsequent to July 1, 1955, which are covered by *any agreement or award under this Act* providing for compensation in installments made as a result of such accident, *such agreement or award may* at any time within 30 months after such agreement or award *be reviewed* by the Commission *at the request of either the employer or the*

> *employee* on the ground that the disability of the employee has subsequently recurred, increased, diminished or ended.
>
> On such review compensation payments may be re-established, increased, diminished or ended. \*\*\*"
> (Emphasis added.) (Ill. Rev. Stat. 1973, ch. 48, par. 138.19(h).)

The plain language indicates that any award may be subject to a section 19(h) proceeding, initiated by either the employee or the employer. In *Summit Coal & Mining Co. v. Industrial Com.* (1923), 308 Ill. 121, the facts were similar to those present here: a claimant was found to have suffered the loss of both eyes "which, under the provisions of section 8 of the Workmen's Compensation act, constituted total and permanent disability" (308 Ill. 121, 122); the employer filed a section 19(h) petition which was denied by the Commission; and the circuit court confirmed. This court reversed because the evidence indicated the claimant was not totally blind at the time of the hearing on the petition, whereas at the time the award was made, which was a final determination of all questions in dispute at the time of that decision, the claimant was found to be completely blind. This court reasoned that because the injury had diminished, the Commission should have determined the extent of the diminution instead of denying the petition outright.

The cases of *Scandroli Construction Co.* (54 Ill. 2d 395) and *National Lock Co.* (62 Ill. 2d 51), cited by the claimant, are not helpful. We agree with the circuit court that those cases, which were before this court on direct appeal rather than on a section 19(h) petition, were concerned with the attempt by the employer to establish a diminution of an injury, resulting in complete disability under section 8(e)(18), on the basis of a claimant's return to work. Section 8(e)(18) of the Act (Ill. Rev. Stat. 1973, ch. 48, par. 138.8(e)(18)) clearly establishes a distinct

category of complete disability for the "specific case of loss of both hands, both arms, or both feet, or both legs, or both eyes, or of any two thereof"—a category which is separate and apart from the complete disability under section 8(f). Where a claimant returns to work and has not suffered the loss of two members (under section 8(e)(18)), section 8(f) allows for the cessation of payments or modification of an award which had been based on complete disability (pursuant to section 8(f)). As held by *Scandroli Construction Co.* and *National Lock Co.,* a claimant's return to work does not negate a finding of complete disability under section 8(e)(18), as it would a finding of complete disability under section 8(f). But those cases are limited to the situation where a claimant has returned to work after an award was made for complete disability under section 8(e)(18). They in no way prevent recourse by an employer to section 19(h) so long as a claimant's return to work is not the basis for establishing a claimant's decreased disability. Hence, a petition under section 19(h) could be properly filed by Motor Wheel here.

A petition for review of an award under section 19(h) is different from appellate review of the award. "A petition for review of an award under section 19(h) *** is not a proceeding which will allow the reversal of a decision of the Industrial Commission or of a judgment of the circuit court. *** The original award or settlement is not to be brought in question, for it must be considered final"; it is *res judicata. (Zimmerly Construction Co. v. Industrial Com.* (1972), 50 Ill. 2d 342, 344-45.) In essence, then, the question in a section 19(h) proceeding is whether the employee's disability has, subsequent to the award, recurred, increased, diminished or ended. As this court noted in *Zimmerly,* the "change in condition must be a material one" (50 Ill. 2d 342, 345-46); and "it is the function of the Industrial Commission to resolve factual questions and *** a court will not set aside a finding of

the Commission unless it is contrary to the manifest weight of the evidence" (50 Ill. 2d 342, 346).

This is the second issue of the instant case: whether the commission's denial of Motor Wheel's petition was against the manifest weight of the evidence. Motor Wheel argues the denial was contrary to the evidence because the Commission should have considered a change in the claimant's condition, since the award was made, on the basis of improvement by the use of corrective lenses. It urges us to adopt a standard for the determination of loss of vision based on the degree of improvement, after an eye injury, due to correction by lenses; and it cites cases from other jurisdictions in support of that contention. We decline to do so.

Our reasons are firmly and clearly set out in *Lambert v. Industrial Com.* (1952), 411 Ill. 593, 604, 606-07. (Accord, *Walker v. Industrial Com.* (1978), 72 Ill. 2d 408, 412-13.) In *Lambert* this court noted that there was a sharp conflict, which the parties agree still exists, among jurisdictions over which of basically two rules should be utilized to determine the extent of the damage to an injured eye. One rule would allow only "naked vision" as the measure of the loss of the eye; that is, the extent of the damage would be determined without recourse to corrective lenses. The other rule would require the loss of the eye to be determined by the "difference" between the eyesight at injury and as corrected by use of lenses. (*Lambert v. Industrial Com.* (1952), 411 Ill. 593, 603-04.) The Act is silent as to whether corrected or uncorrected vision should be the determinant of the extent of the loss of the eye. (*Lambert v. Industrial Com.* (1952), 411 Ill. 593, 606; *Walker v. Industrial Com.* (1978), 72 Ill. 2d 408, 412.) This court, however, rightly declined to restrict the determination of the extent of eye loss to either rule:

"The real difficulty, and one of the causes of the lack of harmony in the authorities, lies in the

fact that neither rule is adequate to cover all cases. If naked vision, alone, is considered, the worker with corrected vision is not adequately protected, and if corrected vision, alone, is considered, the worker with uncorrected vision is not fully protected. In the first instance, the loss of an eye 'industrially blind' with naked vision, but normal with correction, would not be compensable; in the second, an injury rendering a normal eye industrially blind would not be compensable if it could be corrected to normal by the use of glasses." *Lambert v. Industrial Com.* (1952), 411 Ill. 593, 604.

Accord, *Walker v. Industrial Com.* (1978), 72 Ill. 2d 408, 412-14.

The Act requires that industry take the employee as he is, not as he should be, at the time of employment and injury, and compensate the victim for his or her loss in industrial value. When that industrial value is destroyed by the loss of "normal use" of the eyes, "permanent loss" has been sustained even if artificial means allow for some restoration of use. (*Heaps v. Industrial Com.* (1922), 303 Ill. 443, 447. Accord, *C.S.T. Erection Co. v. Industrial Com.* (1975), 61 Ill. 2d 251, 257.) This policy consideration is articulated fully in *Lambert:*

"The theory behind compensation acts is that industry rather than society should care for its wrecked manpower. That care, whether it be in the form of a specific allowance for specified injuries, or whether it be based on reduced earning power, is to remunerate the injured party for his financial loss through the reduction of his industrial value. \*\*\*

In the instant case, the petitioner had normal vision with glasses prior to the injury. The employer had employed him with his corrected

vision and he was performing his work satisfactorily. The petitioner's corrected vision was just as valuable to both petitioner and his employer as was the uncorrected vision of his co-employee. The destruction of petitioner's corrected vision would be the same industrial loss to petitioner and the same loss to industry as the vision of any other employee. The cost to the employer to reimburse petitioner for his loss is no greater than in the case of any other employee who is doing the same work and receiving the same pay. The vision which petitioner had prior to the accident was the vision he depended upon for his industrial value and ability. That was the vision he was selling his employer and the employer was receiving benefits from that vision equal to any other employee in the same work. The injury which petitioner sustained to that vision, (and the reduction in its industrial value,) was petitioner's actual damages by reason of the accident." (411 Ill. 593, 606-07.)

We think Motor Wheel incorrectly contends that adoption of the "corrected vision" standard would be consistent with *Lambert*. *Lambert* stands for the proposition that permanent disability, due to injury of the eyes, is to be determined by actual injury to the victim's eyes as he "used" them at the time of injury. If he used no corrective lenses, then the difference between uncorrected vision at the time of injury and thereafter is the measure of the damage; if he used corrective lenses, then the difference between corrected vision at the time of injury and thereafter is the measure of damage. *Cf. Walker v. Industrial Com.* (1978), 72 Ill. 2d 408.

We conclude that Motor Wheel failed to meet its burden of proving a material change in claimant's condition; so its petition was correctly denied. There was

conflicting medical evidence presented, by way of exhibits from both parties (letters from various doctors), at the hearing on the petition, and it was properly resolved by the Commission. (*National Lock Co. v. Industrial Com.* (1975), 62 Ill. 2d 51, 54.) Also, the claimant testified at the hearing. We will not substitute our judgment, even though we might have drawn other inferences, where the decision of the Commission is not contrary to the manifest weight of the evidence. (*C.S.T. Erection Co. v. Industrial Com.* (1975), 61 Ill. 2d 251, 257. See *Santiago v. Industrial Com.* (1977), 66 Ill. 2d 356, 359.) Our review of the record shows it was not.

We affirm the judgment of the circuit court.

*Judgment affirmed.*

MR. JUSTICE RYAN took no part in the consideration or decision of this case.