LOYD PETRIE, Appellant, v. THE INDUSTRIAL COMMISSION *et al.*
(Klaus Radio, Appellee).
Third District (Industrial Commission Division)   No. 3—86—0823WC

Opinion filed August 24, 1987.—Rehearing denied September 30, 1987.

Emmanuel F. Guyon, of Streator, for appellant.

John Mitchell, of Henry D. Noetzel & Associates, of Peoria, for appellee.

JUSTICE KASSERMAN delivered the opinion of the court:

On November 22, 1982, Loyd Petrie (claimant) filed an application for adjustment of claim under the Workers' Compensation Act (Act) (Ill. Rev. Stat. 1981, ch. 48, par. 138.1 *et seq.*), for injuries allegedly sustained as a result of an accident on July 2, 1981, during the course of his employment with Klaus Radio. On May 20, 1983, the arbitrator awarded claimant temporary total disability compensation of $234.61 per week for 5.43 weeks (Ill. Rev. Stat. 1983, ch. 48, par. 138.8(b)(1)), medical expenses of $1,272.29 (Ill. Rev. Stat. 1983, ch. 48, par. 138.8(a)), and permanent partial disability compensation of $234.61 per week for 62.5 weeks under the "man-as-a-whole" provisions of the Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.8(d)(2)). Neither party sought review of the arbitrator's ruling.

On June 1, 1984, claimant filed a petition for review of the award pursuant to section 19(h) of the Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.19(h)), alleging that his disability had increased. After a hearing, the Industrial Commission denied the petition. On review, the circuit court confirmed the Industrial Commission's decision, and claimant has perfected this appeal.

Three issues are presented on appeal: (1) whether the employee's claim for additional compensation for impairment of earning capacity under section 19(h) of the Act either has been waived or is not subject to consideration because the original award is *res judicata*; (2) whether a change in economic disability alone, as distinguished from physical disability, is a proper basis for modification of an award pursuant to section 19(h) of the Act; and (3) whether the decision of the Industrial Commission was against the manifest weight of the evidence. We affirm.

The following evidence was presented at the arbitration hearing:

Claimant had been employed by Klaus Radio for approximately 19 years on the date of the accident, July 2, 1981. Claimant was employed as a service representative, and his duties included servicing "white goods," *i.e.*, ranges, refrigerators, and other appliances. That work entailed handling small parts, such as screws and electrical wire, in limited spaces. Claimant testified that he also made a habit of mowing the lawn at Klaus Radio. On July 2, 1981, claimant was mowing the lawn when the mower became stuck in a ditch. Claimant grabbed the deck of the mower to free it and the blades caught the tips of his fingers.

Medical records indicate that claimant suffered partial amputation of the fingertips of the right index and middle fingers. He had soft tissue loss over the volar surface of the distal phalanges, each approximately 2 to 3 cm. in size. X rays revealed fractures of the tips of the distal phalanges. A skin graft was taken from the volar surface of the right forearm. Claimant was discharged on July 4, 1981; and after post-operative care, he returned to work on August 9, 1981.

In a letter report dated November 13, 1981, claimant's treating physician stated that claimant had limitations of flexion of the two injured fingers and noted complaints of an inability "to grasp objects that cause direct pressure on the fingertips, such as twisting wires." In January of 1982 claimant was laid off when Klaus Radio closed the department in which he worked.

Claimant did some "odds and ends work" until January of 1983, when he started his own business repairing white goods. Claimant testified that as a result of his injury, the same job takes two to three times longer to perform. Claimant further testified that his fingernails grew over the tips of the two injured fingers, causing him to lose a portion of the dexterity he previously had in those fingers. Claimant also testified that he tried to work on four or five units in an average day. Between January 1983, when claimant started his business, and March 10, 1983, the date of the arbitration hearing, claimant worked on approximately 25 or 30 washing machines, 18 or 20 dryers, 7 or 8 dishwashers, 10 to 20 refrigerators, and 15 to 20 ranges.

In a letter report dated March 7, 1983, Dr. Daniel R. Hoffman states that he "evaluated" claimant that same day. The report relates claimant's complaint that the tips of the two injured fingers were extremely sensitive, causing pain when pressure was applied. The report states that claimant was unable to use those fingers to pick up a coin, fasten screws or nuts, or bend wire properly.

The stipulated request for arbitration hearing indicates that claimant's earnings for the year preceding the injury were $18,299.84 and

that the disputed questions were the nature and extent of the injury, causal connection, and entitlement to an award for impaired earning capacity under section 8(d)(1). The record indicates, however, that the arbitrator awarded claimant $234.61 per week for 62.5 weeks for 12.5% partial disability under the "man-as-a-whole" provision of the Act (Ill. Rev. Stat. 1983, ch. 48, par. 138.8(d)(2)), in addition to temporary total disability and medical expenses.

At the hearing on January 24, 1985, on claimant's section 19(h) petition, claimant testified that it took three to four times longer to accomplish the same job. The only evidence of a change in his physical condition was his testimony that the fingernail and bed of the nail on each of the injured fingers "comes over the tips of the finger," causing him difficulty in doing his work and requiring him to trim the nails quite often.

Claimant also testified as to his gross income for each month in 1984. The total of such gross earnings for 1984 was $17,375.38. He stated that his expenses were approximately $700 per month, that he was reinvesting profits in the business, that he was drawing approximately $200 per month, and that his monthly net income was at most $500 to $600.

In denying claimant's section 19(h) petition, the Industrial Commission found that "no medical evidence of change in his physical condition or evidence of change of circumstances since Arbitration was introduced," and that claimant "failed to prove his permanent disability increased since the time of Arbitration."

Klaus Radio first urges on appeal that claimant's section 19(h) petition is an impermissible collateral attack on the arbitrator's original ruling, that claimant has waived the right to an award under section 8(d)(1) of the Act, and that the prior award of the arbitrator is *res judicata* on the issue of an award under section 8(d)(1). Claimant responds that at the time of the arbitration hearing he had just started his own business and did not have the necessary information available to show loss in earnings.

Claimant's original application for adjustment of claim was filed on November 22, 1982, after he had been laid off in January 1982. Claimant started his own business in January 1983, and the arbitration hearing was held on March 10, 1983. In the stipulated request for hearing, the parties indicated that a question in dispute was claimant's "entitlement to 8(d)(1) disability allowance."

Section 8(d)(1) of the Act provides that when an injured employee becomes "partially incapacitated from pursuing his usual and customary line of employment, he shall, except in cases compensated under

the specific schedule set forth in paragraph (e) of this Section, receive compensation" in an amount equal to 66⅔% of the employee's impaired earning capacity. Ill. Rev. Stat. 1983, ch. 48, par. 138.8(d)(1).

The arbitrator, however, instead of making an award under section 8(d)(1) of the Act, awarded claimant benefits under section 8(d)(2), which provided:

"If, as a result of the accident, the employee sustains serious and permanent injuries not covered by paragraphs (c) and (e) of this Section, or having sustained injuries covered by the aforesaid paragraphs (c) and (e), he shall have sustained in addition thereto other injuries which injuries do not incapacitate him from pursuing the duties of his employment but which would disable him from pursuing other suitable occupations, or which have otherwise resulted in physical impairment; or if such injuries partially incapacitate him from pursuing the duties of his usual and customary line of employment but do not result in an impairment of earning capacity, or having resulted in an impairment of earning capacity, the employee elects to waive his right to recover under the foregoing subparagraph 1 of paragraph (d) of this Section, then in any of the foregoing events, he shall receive in addition to compensation for temporary total disability under paragraph (b) of this Section, compensation at the rate provided in subparagraph 2 of paragraph (b) of this Section for that percentage of 500 weeks that the partial disability resulting from the injuries covered by this paragraph bears to total disability." Ill. Rev. Stat. 1983, ch. 48, par. 138.8(d)(2).

■ In order to recover under section 8(d)(1), claimant was required to prove his actual earnings for a substantial period before the accident and after he returned to work; or, if he is unable to return to work, he is required to prove what he is able to earn in some suitable employment. (Cf. *Franklin Co. Coal Corp. v. Industrial Com.* (1947), 398 Ill. 528, 531, 76 N.E.2d 457, 459.) Claimant was not working at all when he filed his original application, but he had started his own business by the time of the arbitration hearing; yet the record of the arbitration hearing is devoid of any evidence upon which an arbitrator could base an award of impaired earning capacity under section 8(d)(1). Not only did claimant fail to present such proof at the arbitration hearing, he failed to seek review of the section 8(d)(2) award made by the arbitrator.

■ Furthermore, between the time of arbitration and the filing of the section 19(h) petition, claimant's physical condition did not change and his economic condition improved; therefore, claimant's instant

section 19(h) petition is actually a collateral attack on the original award, despite claimant's assertion to the contrary. The original award is consequently final and is not open to question. *Zimmerly Construction Co. v. Industrial Com.* (1972), 50 Ill. 2d 342, 344, 278 N.E.2d 789, 790-91.

■ Although claimant has not made an explicit election to forego compensation under section 8(d)(1) (see Ill. Rev. Stat. 1983, ch. 48, par. 138.8(d)(2)), we nevertheless conclude that claimant has waived the right to claim benefits under the impaired earnings formula by his failure to present proof of impaired earnings at the arbitration hearing and by his failure to introduce any evidence or present any argument that the arbitrator's original award was erroneous. (See *General Electric Co. v. Industrial Com.* (1986), 144 Ill. App. 3d 1003, 1017, 495 N.E.2d 68, 77-78.) Although the arbitrator did not explicitly deny benefits under section 8(d)(1), we conclude that the decision of the arbitrator is *res judicata* on such issue because of claimant's failure to seek review of the arbitrator's ruling.

■ Nevertheless, we will address the merits of claimant's contentions. The first substantive issue presented by this appeal is whether an increase in economic disability alone is a proper basis for modification of an award pursuant to section 19(h) of the Act. (Ill. Rev. Stat. 1983, ch. 48, par. 138.19(h).) This issue is a matter of statutory interpretation. Section 19(h) of the Act provides in pertinent part as follows:

> "[A]s to accidents occurring subsequent to July 1, 1955, which are covered by any agreement or award under this Act providing for compensation in installments made as a result of such accident, such agreement or award may at any time within 30 months after such agreement or award be reviewed by the Commission at the request of either the employer or the employee on the ground that the disability of the employee has subsequently recurred, increased, diminished or ended." (Ill. Rev. Stat. 1983, ch. 48, par. 138.19(h).)

Claimant contends that he "is entitled to a more accurate award calculation for his physical disability, based on increase in economic disability." Claimant relies on *General Electric Co. v. Industrial Com.* (1982), 89 Ill. 2d 432, 438, 433 N.E.2d 671, 674, for the proposition that "the basis of the workers' compensation system should be earnings loss, not the schedule." We note however, that claimant's reliance on this case is misplaced because it did not involve a section 19(h) proceeding; instead, the court there simply held that the Act authorized an award under the impaired earning capacity provisions of section

8(d)(1) even if the worker's injury was specifically listed in the schedule of awards in section 8(e). 89 Ill. 2d 432, 438, 433 N.E.2d 671, 674.

Claimant cites no authority that directly supports his position that the term "disability" in section 19(h) includes economic disability. Although this question is apparently one of first impression in Illinois, Professor Larson states in his treatise:

> "Although the beginning point and usually the main concern of an inquiry into change in condition for reopening purposes is claimant's relative physical condition, it should not be forgotten that disability in the compensation sense has an economic as well as a medical component; accordingly a change in claimant's ability to get or hold employment, or to maintain his earlier earning level, should be considered a 'change in condition,' even though claimant's physical condition may have remained unchanged." (3 A. Larson, Workmen's Compensation sec. 81.31(e), at 15—554.30 (1983).)

The cases cited by Professor Larson indicate a split of authority in other States on this issue; however, none of those cases interpret the term "disability" as used in section 19(h) of the Illinois Act.

We decline to adopt Professor Larson's interpretation of the term disability as used in section 19(h) of the Act. The Act must be read as a whole and courts must adopt the practical interpretation intended by the legislature. (*Moreland v. Industrial Com.* (1970), 47 Ill. 2d 273, 276, 265 N.E.2d 161, 163.) From our review of the Act we conclude that when the legislature used the term "disability" in section 19(h) it was referring to physical and mental disability and not economic disability. This intent is evident by reference to the following sections: section 1(b)(3) refers to an employee's "cause of action by reason of any injury, disablement or death"; section 8(d)(1) states that an injured employee who "becomes partially incapacitated from pursuing his usual and customary line of employment *** shall *** receive compensation for the duration of his disability"; section 8(d)(2) refers to injuries which "disable [the employee] from pursuing other suitable occupations"; and section 12 provides that an injured employee must submit to a physical examination on request of the employer for the purpose of determining the nature, extent, and duration of the injury and for the purpose of determining the amount of compensation due "for disability." (Ill. Rev. Stat. 1983, ch. 48, pars. 138.1(b)(3), 138.8(d)(1), 138.8(d)(2), 138.12.) On the other hand, when the legislature intended to refer to something other than physical and mental disability, it used different or additional language: sections 6(c)(1) and 8(h-1) refer to "legal disability"; and section 8(d)(2) refers to "impair-

ment of earning capacity." (Ill. Rev. Stat. 1983, ch. 48, pars. 138.6(c)(1), 138.8(h-1), 138.8(d)(2).) We conclude, therefore, that a change in physical or mental condition is a prerequisite for a section 19(h) petition.

As to the final issue, we are of the opinion that claimant has failed to present sufficient evidence of a change in condition to warrant an increased award.

■ The issue of whether a claimant's disability has increased is a question of fact for the Industrial Commission, and its decision will not be disturbed on review unless it is contrary to the manifest weight of the evidence. Furthermore, it is claimant's burden to show a change in condition warranting additional compensation (*Sammon v. Industrial Com.* (1984), 123 Ill. App. 3d 182, 184, 462 N.E.2d 788, 790), and the change in condition must be a material one. *Motor Wheel Corp. v. Industrial Com.* (1979), 75 Ill. 2d 230, 236, 388 N.E.2d 380, 382.

■ Claimant contends that evidence of a change in his physical condition was presented at the hearing on the section 19(h) petition when he testified that his fingernails tended to curl over the tips of his fingers, resulting in a diminution of the dexterity in such fingers. However, we note that claimant testified at the arbitration hearing that he had the same problem. In any event, we conclude that this is not a material change in condition sufficient to warrant additional benefits.

For the foregoing reasons, the decisions of the Industrial Commission and the circuit court are affirmed.

Affirmed.

BARRY, P.J., and McCULLOUGH, McNAMARA, and WOODWARD, JJ., concur.