BETTY LOU GAY, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (General Electric Company, Appellee).

Fourth District (Industrial Commission Division)   No. 4—88—0117WC

Opinion filed January 9, 1989.

130

Marszalek & Marszalek, of Chicago (Steven A. Globis, of counsel), for appellant.

Dukes, Martin, Helm & Ryan, Ltd., of Danville (John F. Martin, of counsel), for appellee.

JUSTICE LEWIS delivered the opinion of the court:

Petitioner, Betty Lou Gay, filed a petition under section 19(h) of the Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.19(h)) on March 26, 1986, alleging that there was a material increase in her disability since an earlier decision of the Industrial Commission on November 2, 1984. The Industrial Commission, in its order of February 11, 1987, found that petitioner failed to prove a material increase in her disability and denied her section 19(h) petition. The circuit court of Vermilion County confirmed the Industrial Commission's decision in an order entered on January 21, 1988. The petitioner appeals this decision.

On appeal, petitioner contends that the Industrial Commission's denial of her section 19(h) petition was contrary to the manifest weight of the evidence. Specifically, petitioner argues that the replacement of her natural knee with a prosthesis constituted a material increase in her disability.

The evidence presented at the original hearing before the arbitrator was as follows: On November 7, 1979, petitioner was employed as a finisher by respondent, General Electric Company, and in the course of doing her work, she arose from a chair to obtain a wire stripper. A protruding iron bar caught the leg of her pants and caused petitioner to fall to her hands and knees onto the concrete floor. Her knees began to hurt after her fall so she went to her personal physician the next day; however, he referred her to Dr. Bharat Mehta. Dr. Mehta X-rayed her knees, placed her left knee in a leg brace, and prescribed physical therapy, pain pills and the use of a cane. Petitioner was unable to work for approximately 2½ months. She returned to work on January 14, 1980, but she remained under Dr. Mehta's care.

Although she had pain in her left knee and walked with a cane, petitioner continued to work until April 22, 1980, whereupon Dr. Mehta advised her to undergo knee surgery. On April 24, 1980, Dr. Mehta did an arthroscope and performed a high valgus tibial osteotomy on petitioner's left knee. Dr. Mehta's diagnosis of petitioner's condition on April 23, 1980, was that she had "[d]egenerative arthritis of the left knee with varus deformity." Because of her surgery,

petitioner was disabled for work from April 23, 1980, until April 27, 1981.

In addition to petitioner's testimony, Dr. Mehta's records regarding his ongoing treatment of the petitioner, petitioner's hospital records of her initial examination at the time of her injury and of her surgery in 1980, a one-page report by Dr. Sadler, and two letters from a Dr. Donald S. Miller were admitted as exhibits on her behalf. The only evidence presented by respondent was a one-page report by Dr. Sadiq.

Petitioner's review hearing before the Industrial Commission was held on July 27, 1982. At that hearing, petitioner testified that although she could perform her duties at work while sitting down, she still suffered from pain in her left knee and up her thigh. By April 1982, the pain was so intense that she was almost unable to walk. She returned to Dr. Mehta and he injected her knee with cortisone and prescribed two weeks of physical therapy. He also gave her a prescription for Darvocet, a pain killer she had been taking since the date of her injury.

Petitioner further testified that, at the end of her shift at work, she had a lot of pain and her legs were weak. On weekends and in the evenings, she had to elevate her legs to relieve the pain. She used a cane to enter and to leave work and for any long-distance walking; however, she did not use the cane when she was at home. In addition to petitioner's testimony, petitioner's medical records were admitted as evidence.

The Industrial Commission entered its decision as to petitioner's disability on November 2, 1984, in which it awarded her all her medical expenses, compensation for temporary total disability for $61^{3/7}$ weeks and compensation for permanent partial loss of 50% of the use of her left leg.

On March 26, 1986, petitioner filed a section 19(h) petition alleging an increase in her disability. Hearings on this petition were conducted on March 27, 1986, and on May 28, 1986, at which petitioner testified and medical records and doctors' reports were introduced. Petitioner's testimony established that she continued to work at General Electric until October 30, 1983, whereupon she then entered the hospital at Dr. Mehta's behest. During this hospitalization, Dr. Mehta did an Insall-Burstein total left knee replacement. Dr. Mehta diagnosed petitioner's condition after this surgery as: "Severe post-traumatic arthritis left knee."

After her knee replacement surgery, petitioner returned to work on November 26, 1984. Petitioner remained seated for her work;

however, she still suffered pain in her left leg at the end of her work day. She also had difficulty maintaining her balance when walking and continued to use a cane. Her duties at work required that she lift boxes weighing approximately 25 pounds and carry the boxes about 20 feet. After three weeks of work, petitioner determined that she was unable to handle her job and she notified respondent of her intention to retire. Subsequently, she retired on March 1, 1985.

■■ ■ The purpose of a proceeding under section 19(h) is to determine if a petitioner's disability has "recurred, increased, diminished or ended" since the time of the original decision of the Industrial Commission. (Ill. Rev. Stat. 1985, ch. 48, par. 138.19(h); *Howard v. Industrial Comm'n* (1982), 89 Ill. 2d 428, 433 N.E.2d 657.) To warrant a change in benefits, the change in a petitioner's disability must be material. (*United States Steel Corp. v. Industrial Comm'n* (1985), 133 Ill. App. 3d 811, 478 N.E.2d 1108.) In reviewing a section 19(h) petition, the evidence presented in the original proceeding must be considered to determine if the petitioner's position has changed materially since the time of the Industrial Commission's first decision. (*Howard*, 89 Ill. 2d 428, 433 N.E.2d 657.) Whether there has been a material change in a petitioner's disability is an issue of fact, and the Industrial Commission's determination will not be overturned unless it is contrary to the manifest weight of the evidence. *Howard*, 89 Ill. 2d 428, 433 N.E.2d 657; *United States Steel Corp.*, 133 Ill. App. 3d 811, 478 N.E.2d 1108.

■■ ■ At the original hearing before the Industrial Commission, the evidence adduced established that petitioner had had and continued to have pain in her left knee. She also suffered from pain in her hips and her lower back. She used a cane for ambulation of long distances but did not use the cane at home. She took Darvocet for pain. X rays showed "marked narrowing of the joint space on the medial side and fairly marked degenerative changes of post-traumatic arthritis." There was also marked crepitus in the knee joint. In 1981, petitioner walked with a limp, her flexion of the knees was limited by 15% to 20%, and her leg measurements were: the right leg was 17 inches, the left leg was 17½ inches; the calf of the right leg was 17 inches, the calf of the left leg was 16½ inches. In 1982, petitioner wore a rigid knee brace. Dr. Mehta's diagnosis of her condition was degenerative arthritis of the left knee.

At the section 19(h) petition hearings, petitioner presented evidence that she had had a total left knee replacement. She suffered pain in her left knee, her hips and her lower back. When she

walked, she used a cane for long distances but she did not use her cane when she was at home. She was able to drive a car around the city but if she needed to travel farther, she had her sons drive her. The Commissioner conducting the hearing observed that she had swelling of her left ankle and of her left knee. She still took Darvocet for pain. The flexion of her right knee was 140 degrees while the flexion of her left knee was 90 degrees. The diagnosis of her condition at this time was that she suffered from post-traumatic arthritis of her left knee.

From this evidence, we find that petitioner failed to present evidence of a substantial difference between her pre- and post-surgery disability. Petitioner still had a limited range of motion in her left knee, she still had pain, she still used a cane for ambulation, and she continued to take medication. These same symptoms of petitioner's disability were apparent at her original hearing before the Industrial Commission, and the diagnosis of her disability was substantially the same at the section 19(h) petition hearing as at the original hearing before the Industrial Commission.

Petitioner urges this court to conclude that the replacement of a natural part with a prothesis alone is sufficient to show a material increase in a petitioner's disability. There is no mechanical test for determining whether the Commission should measure a disability with or without a corrective prosthesis. (*Gilbert & Shughart Painting Contractors v. Industrial Comm'n* (1985), 136 Ill. App. 3d 163, 483 N.E.2d 392; *Motor Wheel Corp. v. Industrial Comm'n* (1979), 75 Ill. 2d 230, 388 N.E.2d 380 (measure of damages is between uncorrected vision at time of accident and uncorrected vision thereafter); see also 2 A. Larsen, The Law of Workmen's Compensation §58.13(f) (1987) (similar questions may arise as to prosthetic devices other than eyeglasses).) This is because neither the "uncorrected impairment" rule nor the "corrected impairment" rule adequately covers all cases. (*Motor Wheel Corp.*, 75 Ill. 2d 230, 388 N.E.2d 380, citing *Lambert v. Industrial Comm'n* (1952), 411 Ill. 593, 104 N.E.2d 783.) How correctability should be weighed is a factual question. (*Walker v. Industrial Comm'n* (1978), 72 Ill. 2d 408, 381 N.E.2d 238.) In this case, the Industrial Commission made the factual determination that petitioner's prothesis did not materially increase her disability.

Further, we find that the Industrial Commission's decision of a 50% left leg disability took into consideration the future need for a total knee replacement for a progressive condition. Thus, the Industrial Commission's decision that petitioner had no material increase

in her disability was not against the manifest weight of the evidence.

For the foregoing reasons, the judgment of the circuit court of Vermilion County, confirming the Industrial Commission's denial of claimant's section 19(h) petition, is affirmed.

Judgment affirmed.

BARRY, P.J., and McNAMARA, WOODWARD, and McCULLOUGH, JJ., concur.