UNITED AIRLINES, Appellant, v. ILLINOIS WORKERS' COMPENSATION COMMISSION *et al.* (Charlotte Graham, Appellee).

First District (Illinois Workers' Compensation Commission Division)
No. 1—09—2966WC

Opinion filed January 18, 2011.—Rehearing denied February 18, 2011.

Erica Rogina, of Wiedner & McAullife, of Chicago, for appellant.

Nancy Shepard, of Katz, Friedman, Eagle, Eisenstein & Johnson, of Chicago, for appellee.

PRESIDING JUSTICE McCULLOUGH delivered the judgment of the court, with opinion.

Justices Hoffman, Hudson, Holdridge and Stewart concurred in the judgment and opinion.

## OPINION

On March 31 and April 2, 2003, claimant, Charlotte Graham, filed applications for adjustment of claim pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2002)), seeking benefits from employer, United Airlines. At arbitration, the parties stipulated that claimant sustained accidental injuries that arose out of and in the course of her employment on May 9 and October 23, 2001. The only disputed issue was the nature and extent of her injuries. Following a consolidated hearing, the arbitrator awarded claimant wage differential benefits pursuant to section 8(d)(1) of the Act (820 ILCS 305/8(d)(1) (West 2002)) of (1) $417.93 per week for 13 weeks from May 13, 2005, through August 11, 2005; (2) $407.93 per week for $9^5/_7$ weeks from August 12, 2005, through May 8, 2007; and (3) $407.93 from May 9, 2007 and "continuing for the duration of the disability."

The Illinois Workers' Compensation Commission (Commission) affirmed and adopted the arbitrator's decision. On judicial review, the

circuit court of Cook County confirmed the Commission. Employer appeals, arguing (1) the word "disability" as used in section 8(d)(1) of the Act encompasses economic disability and (2) the Commission erred by sustaining claimant's objection to evidence offered by employer regarding claimant's work-life expectancy. We affirm.

On August 26, 1990, claimant began working for employer as a flight attendant. Employer agrees she sustained accidental injuries to her back that arose out of and in the course of her employment on both May 9, 2001, and October 23, 2001. Following her work-related accidents, claimant underwent extensive medical treatment, including two surgeries to her lower back. Ultimately, claimant's treating physician placed her under permanent restrictions of no lifting of greater than 30 pounds, no pushing or pulling of greater than 40 pounds, and no repetitive bending or twisting. Employer's medical department also determined long-term restrictions on claimant's physical activities to be appropriate.

At arbitration, claimant sought wage differential benefits pursuant to section 8(d)(1) of the Act (820 ILCS 305/8(d)(1) (West 2002)). Employer attempted to introduce the testimony and a report of Dr. Arthur Eubanks, an economist, to provide an opinion on what age claimant was likely to leave the workforce. Claimant objected to Dr. Eubanks's testimony and report, arguing it was irrelevant in a section 8(d)(1) proceeding. Employer argued the word "disability" in section 8(d)(1) referred to "economic disability" and evidence as to when claimant was likely to leave the workforce would be relevant to determining when her "economic disability" would end. The arbitrator disagreed with employer and sustained claimant's objection to the evidence.

On April 8, 2009, the Commission affirmed and adopted the arbitrator's decision without further comment. On September 24, 2009, the circuit court of Cook County confirmed the Commission.

This appeal followed.

On appeal, employer argues the Commission erred by sustaining claimant's objection to the opinion evidence of its economist, Dr. Eubanks, regarding the age at which claimant would retire from the workforce. It contends the clause "duration of disability" in section 8(d)(1) of the Act refers to the duration of a claimant's impaired earning capacity and Dr. Eubanks's opinions were relevant to a calculation of benefits under section 8(d)(1).

"Evidentiary rulings made during the course of a workers' compensation case will not be disturbed on review absent an abuse of discretion." *Certified Testing v. Industrial Comm'n*, 367 Ill. App. 3d 938, 947, 856 N.E.2d 602, 610 (2006). However, issues involving statu-

tory construction are subject to *de novo* review. *Washington District 50 Schools v. Illinois Workers' Compensation Comm'n*, 394 Ill. App. 3d 1087, 1090, 917 N.E.2d 586, 589 (2009).

"The fundamental rule of statutory interpretation is to ascertain and effectuate the legislature's intent." *Beelman Trucking v. Illinois Workers' Compensation Comm'n*, 233 Ill. 2d 364, 370, 909 N.E.2d 818, 822 (2009). The best indication of legislative intent is the statutory language, given its plain and ordinary meaning. *Beelman Trucking*, 233 Ill. 2d at 370-71, 909 N.E.2d at 822. Other considerations include "the reason for the law, the problems to be remedied, and the objects and purposes sought." *Beelman Trucking*, 233 Ill. 2d at 371, 909 N.E.2d at 822-23. "[T]he *** Act is a remedial statute intended to provide financial protection for injured workers and it is to be liberally construed to accomplish that objective." *Beelman Trucking*, 233 Ill. 2d at 371, 909 N.E.2d at 823.

Section 8(d)(1) of the Act provides as follows:

"If, after the accidental injury has been sustained, the employee as a result thereof becomes partially incapacitated from pursuing his usual and customary line of employment, he shall *** receive compensation for the *duration of his disability*, subject to the limitations as to maximum amounts fixed in paragraph (b) of this Section, equal to 66²/₃% of the difference between the average amount which he would be able to earn in the full performance of his duties in the occupation in which he was engaged at the time of the accident and the average amount which he is earning or is able to earn in some suitable employment or business after the accident." (Emphasis added.) 820 ILCS 305/8(d)(1) (West 2002).

Here the parties dispute the meaning of "disability" as used in section 8(d)(1). Claimant contends "disability" refers only to physical or mental disability, while employer maintains it also encompasses economic disability. The arbitrator and Commission rejected employer's interpretation, relying on *Petrie v. Industrial Comm'n*, 160 Ill. App. 3d 165, 513 N.E.2d 104 (1987).

In *Petrie*, 160 Ill. App. 3d at 170, 513 N.E.2d at 108, this court considered "whether an increase in economic disability alone [was] a proper basis for modification of an award pursuant to section 19(h) of the Act." We concluded "that a change in physical or mental condition is a prerequisite for a section 19(h) petition." *Petrie*, 160 Ill. App. 3d at 172, 513 N.E.2d at 109. A review of the Act showed "that when the legislature used the term 'disability' in section 19(h) it was referring to physical and mental disability and not economic disability." *Petrie*, 160 Ill. App. 3d at 171, 513 N.E.2d at 108.

"This intent is evident by reference to the following sections: section 1(b)(3) refers to an employee's 'cause of action by reason of any injury, disablement or death'; section 8(d)(1) states that an injured employee who 'becomes partially incapacitated from pursuing his usual and customary line of employment *** shall *** receive compensation for the duration of his disability'; section 8(d)(2) refers to injuries which 'disable [the employee] from pursuing other suitable occupations'; and section 12 provides that an injured employee must submit to a physical examination on request of the employer for the purpose of determining the nature, extent, and duration of the injury and for the purpose of determining the amount of compensation due 'for disability.' [Citation.] On the other hand, when the legislature intended to refer to something other than physical and mental disability, it used different or additional language: sections 6(c)(1) and 8(h—1) refer to 'legal disability'; and section 8(d)(2) refers to 'impairment of earning capacity.' [Citation.]" *Petrie*, 160 Ill. App. 3d at 171-72, 513 N.E.2d at 108-09.

This court relied on *Petrie* in *Cassens Transport Co. v. Illinois Industrial Comm'n*, 354 Ill. App. 3d 807, 821 N.E.2d 1274 (2005), when specifically addressing whether "disability" as used in section 8(d)(1) meant economic disability. In that case, the employer filed a motion to suspend wage differential benefits that were previously awarded to the claimant, asserting the claimant "had failed to respond to requests to provide income tax returns to determine whether a wage loss still existed." *Cassens*, 354 Ill. App. 3d at 807, 821 N.E.2d at 1275. The Commission denied the motion, finding section 8(d)(1) did not refer to economic disability, only physical and mental disability. *Cassens*, 354 Ill. App. 3d at 807-08, 821 N.E.2d at 1275. "As there was no allegation that there was a change in [the] claimant's physical condition, the Commission found there was no basis for suspending payments." *Cassens*, 354 Ill. App. 3d at 808, 821 N.E.2d at 1275.

On review, we determined that neither the Commission nor this court had jurisdiction in the case, stating section 8(d)(1) was not one of the select provisions of the Act that permitted the Commission to reopen or modify a final decision. *Cassens*, 354 Ill. App. 3d at 811, 821 N.E.2d at 1278. However, we also stated there was "no reason to limit the interpretation of 'disability' in *Petrie* to section 19(h)" and found the word had "the same definition for purposes of review of wage differential benefits under section 8(d)(1)." *Cassens*, 354 Ill. App. 3d at 810, 821 N.E.2d at 1277.

In *Cassens*, the supreme court granted the employer's petition for leave to appeal and affirmed this court's ultimate decision in the case. *Cassens Transport Co. v. Industrial Comm'n*, 218 Ill. 2d 519, 533, 844

N.E.2d 414, 423 (2006). It agreed that the Commission lacked jurisdiction to modify the claimant's section 8(d)(1) award. *Cassens*, 218 Ill. 2d at 533, 844 N.E.2d at 423. However, the court determined it was unnecessary to address the employer's arguments as to the definition of "disability" in section 8(d)(1) and found this court's discussion of that issue was improper. *Cassens*, 218 Ill. 2d at 533, 844 N.E.2d at 423-24.

In rendering its decision, the supreme court held the duration clause of section 8(d)(1) "is meaningful to the Commission's initial determination of the proper award in any section 8(d)(1) case." *Cassens*, 218 Ill. 2d at 529, 844 N.E.2d at 422. "By its plain language, [section 8(d)(1)] allows arbitrators and the Commission the option of determining that a claimant's disability is likely to end, abate, or increase after a certain duration, and awarding compensation accordingly." *Cassens*, 218 Ill. 2d at 529, 844 N.E.2d at 422. Further, "the Act establishes that employees and employers alike must use the opportunity of their initial hearing to present evidence showing the likely duration of an injury and its effect on the claimant's earning capacity." *Cassens*, 218 Ill. 2d at 530, 844 N.E.2d at 422.

The supreme court noted that to obtain benefits under section 8(d)(1), the claimant "must prove (1) that he or she is partially incapacitated from pursuing his or her usual and customary line of employment and (2) that he or she has suffered an impairment in the wages he or she earns or is able to earn." *Cassens*, 218 Ill. 2d at 531, 844 N.E.2d at 422. The second prong of the section 8(d)(1) inquiry "focuses on earning capacity, rather than the dollar amount of an employee's take-home pay." *Cassens*, 218 Ill. 2d at 531, 844 N.E.2d at 422.

Employer argues the supreme court's analysis in *Cassens* supports its position. Citing various portions of the court's decision, it contends that the court "made clear" that the reference to "disability" in section 8(d)(1) "addresses the physical/mental, as well as economic components of 'disability' for purposes of compensating the impairment of long-term earning capacity caused by the work injury."

Employer confuses the court's analysis of section 8(d)(1) as a whole with analysis of the phrase "duration of disability" or simply the word "disability." A discussion of section 8(d)(1) necessarily encompasses economic factors because its purpose is to compensate an injured employee for his reduced earning capacity. It does not follow that the specific phrase "duration of disability" within section 8(d)(1) must refer to economic disability rather than the duration of a claimant's physical or mental injury. As stated, the court expressly declined to address the issue of the definition of "disability" as used in section

8(d)(1). A clear reading of *Cassens* shows it does not stand for the proposition employer suggests.

Additionally, this court has previously rejected the argument that a wage differential award should end at the age of retirement. In *Fritz Electric Co. v. Industrial Comm'n*, 165 Ill. App. 3d 550, 561, 518 N.E.2d 1289, 1296 (1988), the employer argued the Commission erred by not limiting its wage differential award to when the claimant turned 65, "implying that such loss could be a lifelong award long after [the claimant's] earning capacity would abate from retirement or nonrelated illness." We noted the employer "cited no cases requiring an interpretation of th[e] statutory language ['for the duration of his disability'] other than its plain, ordinary meaning" and we declined to read any such requirement into the Act. *Fritz*, 165 Ill. App. 3d at 561, 518 N.E.2d at 1296.

The definition of "disability" announced in *Petrie* also applies to the definition of the word as used in section 8(d)(1) of the Act. The supreme court's decision in *Cassens* did not address this issue and does not alter the holding in *Petrie*. The Commission did not err by finding economic disability was not encompassed within the word "disability" as used in section 8(d)(1).

The Commission also committed no error by sustaining claimant's objection to the evidence offered by employer regarding claimant's work-life expectancy. Employer sought to admit testimony and a report from Dr. Eubanks, an economist, who opined claimant's "age at the time she is expected to exit the work force is within a range of age 58.27 to age 67.00 with a mid-point of age 62.64." His opinions were based on her gender, age, educational attainment level, status in the work force, trial date, and the Skoog and Ciecka work-life expectancy model.

Not only are Dr. Eubanks's opinions speculative, they are also irrelevant to a determination of wage differential benefits. As discussed, the word "disability" in section 8(d)(1) does not refer to economic disability and employer's proffered evidence is not relevant to determining the "duration of [claimant's] disability." The opinion evidence also adds nothing to other wage-differential considerations such as claimant's incapacitation from employment or the impairment in the wages she earned or was able to earn. The Commission committed no error.

For the reasons stated, we affirm the circuit court's judgment, confirming the Commission.

Affirmed.