2017 IL App (1st) 160005WC

Workers' Compensation
Commission Division
Opinion Filed: January 6, 2017

No. 1-16-0005WC

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT
_____

| | | |
|---|---|---|
| ANTHONY MURFF, | ) | Appeal from the |
| | ) | Circuit Court of |
| Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 15 L 50353 |
| | ) | |
| THE ILLINOIS WORKERS' COMPENSATION | ) | |
| COMMISSION *et al.* | ) | Honorable |
| | ) | Carl Anthony Walker, |
| (City of Chicago, Appellee). | ) | Judge, Presiding. |

_____

JUSTICE HOFFMAN delivered the judgment of the court, with opinion.
Presiding Justice Holdridge and Justices Hudson, Harris, and Moore concurred in the judgment and opinion.

**OPINION**

¶ 1    The claimant, Anthony Murff, appeals from an order of the circuit court of Cook County which confirmed a decision of the Illinois Workers' Compensation Commission (Commission), denying his petition pursuant to section 19(h) of the Workers Compensation Act (Act) (820 ILCS 305/19(h) (West 2014)) by reason of his failure to present evidence demonstrating a change in his physical or mental condition.  For the reasons which follow, we affirm the judgment of the circuit court.

¶ 2     The following factual recitation is taken from the evidence presented at the arbitration hearing conducted on December 27, 2013, and at a section 19(h) (820 ILCS 305/19(h) (West 2014)) hearing conducted by the Commission on December 22, 2014.

¶ 3     The claimant was employed by the City of Chicago (City) as a laborer and worked in its streets and sanitation department. On January 23, 2009, the claimant was at work, pulling a heavy garbage container through the snow, when he felt a pop in his left shoulder. Following his work accident, the claimant sought treatment from Dr. Bush-Joseph and Dr. Phillips who diagnosed him with a C5-C6 disc herniation "with resultant cervical radiculopathy" and a partial-thickness rotator cuff tear of the left shoulder with possible radiculopathy. The claimant underwent a course of medical treatment, including physical therapy, steroid injections, and cervical spine surgery performed on August 10, 2009. The claimant, however, continued to experience left-sided neck pain and stiffness, left shoulder pain, and numbness and tingling in the left hand. Ultimately, on May 14, 2010, Dr. Bush-Joseph released the claimant to light-duty work with a restriction of no lifting greater than 20 pounds. Dr. Bleier of MercyWorks Occupational Health, the City's designated medical facility, also determined that restrictions of no lifting more than 25 pounds and limited use of the left arm were appropriate. According to a work status note dated June 3, 2010, Dr. Bleier wrote that the City was going to provide the claimant with a rodent control job as a temporary accommodation.

¶ 4     On June 8, 2010, the claimant returned to work as a sanitation laborer in the City's rodent control department. His job duties included "baiting" yards and alleys, which required him to carry a 10-pound bucket of poison in his right hand and a scooper in his left hand. He testified that his job title and pay remained the same as when he worked as a garbage man.

¶ 5    On August 7, 2011, the claimant was examined by Dr. Chmell, an orthopedic surgeon, at his attorney's request.   In his report, Dr. Chmell opined that the claimant's January 23, 2009, work accident resulted in his C5-C6 disc herniation and left shoulder rotator cuff tendinopathy and that the medical treatment he received for these injuries was reasonable and necessary. Following his examination, Dr. Chmell concluded that the claimant had reached maximum medical improvement, would always require restrictions, and would never be able to resume working as a garbage collector.

¶ 6    At the original arbitration hearing, the claimant testified that he has good and bad days. He explained that he continues to experience pain in his shoulder, stiffness in his neck, and numbness and tingling in his hands.  The claimant also testified that any overhead activities are "extremely hard" and he has difficulty getting dressed and applying deodorant to his left side. He used to be an avid hunter and fisherman, but is no longer able to "sport fish" with a lure.  He also struggles with lifting his grandchildren, gripping pens and pencils, and driving for long periods of time.  Despite these limitations, the claimant stated that he has learned to live with his condition and is able to function.

¶ 7    Following the arbitration hearing, the arbitrator issued a written decision on January 22, 2014, finding that the claimant suffered an injury to his cervical spine and left shoulder as a result of the work accident of January 23, 2009, and that the injury arose out of and in the course of his employment with the City.  The arbitrator awarded the claimant temporary total disability (TTD) benefits from January 27, 2009, through June 8, 2010, and permanent partial disability (PPD) benefits in the amount of $664.72 per week for 250 weeks because the cervical spine and left shoulder injuries resulted in a 50% loss of use of a person as a whole.  Neither party filed for a review of the arbitrator's decision before the Commission.  Thus, pursuant to section 19(b) of

the Act, the arbitrator's decision became the conclusive decision of the Commission. 820 ILCS 305/19(b) (West 2014).

¶ 8    After the hearing, the claimant continued working for the City as a sanitation laborer in rodent control. On June 11, 2014, the claimant's supervisor, George Escavez, told him to report to 39th Street and South Iron Street, which is the City's refuse collection for garbage station. The claimant went to that location the next day and was informed by Gloria, the superintendent, that he was assigned to work as a garbage man. When the claimant told Gloria about his work restrictions, she called and spoke with Escavez in rodent control, and told the claimant that she did not know why they sent him to the sanitation station. Gloria instructed the claimant to return to the office for rodent control, which he did. There, Escavez explained to the claimant that he was supposed to be released to work as a garbage man and, if he could not perform the work, to swipe out and go home or call the union.

¶ 9    On June 20, 2014, the claimant filed a petition pursuant to section 19(h) of the Act (820 ILCS 305/19(h) (West 2014)), and section 8(a) of the Act (820 ILCS 305/8(a) (West 2014)), alleging a material increase in his disability and seeking an award of additional benefits, including maintenance and vocational rehabilitation based upon a reduction in his earning power.

¶ 10    On July 16, 2014, the claimant requested reasonable accommodations, but was told that reasonable accommodations could not be made. The claimant was also informed that, because he had permanent restrictions, the City would probably "never bring him back because they are not doing that anymore."

¶ 11    At the section 19(h) hearing held before the Commission on December 22, 2014, the claimant testified that, after he was assigned to work as a garbage man, he contacted his union but learned that it could not help him. The claimant stated that an effort was made to put him

back onto workers' compensation, but his request was denied. Instead, he was told he could go on ordinary disability, which he did.

¶ 12    The claimant further testified that he received no medical treatment for his left shoulder following the December 27, 2013, arbitration hearing. He also explained that there is nothing else the doctors can do for his neck, that his condition remains relatively the same, and that his work restrictions have not changed from when his case was tried at arbitration. He admitted that he has not returned to Dr. Phillips since July of 2010, and has not undergone any additional surgery or physical therapy. The claimant also testified that he is not currently working and has not applied for employment with any other employers.

¶ 13    On April 27, 2015, the Commission denied the claimant's section 19(h) petition. The Commission found that the term "disability" as used in section 19(h) refers only to physical and mental disability, not economic disability. Since the claimant failed to present any evidence demonstrating a material change in his physical or mental condition, the Commission found no basis to reopen or modify the benefits the claimant was previously awarded. The Commission also determined that the doctrine of *res judicata* barred the claimant from seeking maintenance and vocational rehabilitation benefits because he failed to raise the issue at the arbitration hearing. Alternatively, even if the maintenance and vocational rehabilitation benefits were available, the Commission found that the claimant failed to present sufficient evidence establishing his entitlement to those benefits.

¶ 14    The claimant sought a judicial review of the Commission's decision in the circuit court of Cook County. On December 17, 2015, the circuit court confirmed the Commission's decision, and this appeal followed.

¶ 15    We first address the claimant's argument that the Commission erred in finding that the term "disability" in section 19(h) of the Act refers only to physical and mental disability, not economic disability.

¶ 16    Initially, we note that the resolution of this issue requires this court to interpret section 19(h) of the Act, which presents a question of law that we review *de novo*. *R.D. Masonry, Inc. v. Industrial Comm'n*, 215 Ill. 2d 397, 402 (2005). In construing the Act, our primary goal is to ascertain and give effect to the intent of the legislature. *Beelman Trucking v. Illinois Workers' Compensation Comm'n*, 233 Ill. 2d 364, 370 (2009). The best indication of legislative intent is the statutory language, given its plain and ordinary meaning. *Id*. "We must construe the statute so that each word, clause, and sentence is given a reasonable meaning and not rendered superfluous, avoiding an interpretation that would render any portion of the statute meaningless or void." *Cassens Transport Co. v. Industrial Comm'n*, 218 Ill. 2d 519, 524 (2006). In addition to the statutory language, courts also interpret the Act liberally to effectuate its purpose: providing financial protection to injured workers. *Beelman Trucking*, 233 Ill. 2d at 371. In light of these principles, we turn to the statutory provisions at issue.

¶ 17    Section 19(h) provides, in relevant part, as follows:

> "[A]s to accidents occurring subsequent to July 1, 1955, which are covered by any agreement or award under this Act providing for compensation in installments made as a result of such accident, such agreement or award may at any time within 30 months, or 60 months in the case of an award under Section 8(d)1, after such agreement or award be reviewed by the Commission at the request of either the employer or the employee on the ground that the disability of the employee

has subsequently recurred, increased, diminished, or ended." 820 ILCS 305/19(h) (West 2014).

¶ 18 The parties dispute the meaning of "disability" as used in section 19(h). The City contends that the term "disability" refers only to physical and mental disability, while the claimant maintains that it also encompasses economic disability. The Commission rejected the claimant's interpretation, relying on *Petrie v. Industrial Comm'n*, 160 Ill. App. 3d 165 (1987).

¶ 19 In *Petrie*, 160 Ill. App. 3d at 168, the claimant sustained injuries to his right index and middle fingers. At arbitration, the claimant requested an award for impaired earning capacity under section 8(d)(1), but was awarded an amount for percentage of loss of man as a whole under section 8(d)(2) of the Act. Thereafter, the claimant filed a petition for review under section 19(h) seeking additional compensation for impairment of earning capacity. At the hearing, the claimant testified that it took him three to four times longer to accomplish the same job and that his gross earnings had diminished. The Commission denied the claimant's section 19(h) petition, finding that there had been no medical evidence of change in his physical condition or evidence of change in circumstances since the time of arbitration. *Id*.

¶ 20 On appeal, the claimant in *Petrie* argued that he was "entitled to a more accurate award calculation for his physical disability, based on [an] increase in economic disability." *Id.* at 170. In rejecting this argument, this court noted that a review of the Act showed that "when the legislature used the term 'disability' in section 19(h) it was referring to physical and mental disability and not economic disability." *Id.* at 171. We explained:

"This intent is evident by reference to the following sections: section 1(b)(3) refers to an employee's 'cause of action by reason of any injury, disablement or death ***'; section 8(d)(1) states that an injured employee who 'becomes partially

incapacitated from pursuing his usual and customary line of employment *** shall *** receive compensation for the duration of his disability ***'; section 8(d)(2) refers to injuries which 'disable [the employee] from pursuing other suitable occupations'; and section 12 provides that an injured employee must submit to a physical examination on request of the employer for the purpose of determining the nature, extent, and duration of the injury and for the purpose of determining the amount of compensation due 'for disability.' [Citations.] On the other hand, when the legislature intended to refer to something other than physical and mental disability, it used different or additional language: sections 6(c)(1) and 8(h-1) refer to 'legal disability'; and section 8(d)(2) refers to 'impairment of earning capacity.' [Citation.]" *Id.* at 171-72.

Accordingly, we held that an increase in economic disability alone is not a proper basis for modification of an award pursuant to section 19(h) of the Act; rather, the claimant must present evidence establishing that his physical or mental condition has changed. *Id*.

¶ 21      Based upon the holding in *Petrie*, we conclude that the Commission did not err in finding that the term "disability" as used in section 19(h) of the Act, refers to physical and mental disabilities, not economic disabilities. See also *United Airlines v. Workers' Comp. Comm'n*, 407 Ill. App. 3d 467, 471 (2011) (noting that a change in economic circumstances is not a proper basis for modification of an award pursuant to section 19(h)); *Cassens Transport Co. v. Industrial Comm'n*, 354 Ill. App. 3d 807, 810 (2005) (the term "disability" in section 8(d)(1) refers to physical and mental disability).

¶ 22      Having found that the term "disability" in section 19(h) refers to physical and mental disability, we next consider whether the claimant's disability has "recurred, increased, diminished

or ended" since the time of the original award. *Gay v. Industrial Comm'n*, 178 Ill. App. 3d 129, 132 (1989). "To warrant a change in benefits, the change in a [claimant's] disability must be material." *Id.* In reviewing a section 19(h) petition, the evidence presented in the original proceeding must be considered to determine if the claimant's position has changed materially since the time of the original decision. *Id.* Whether there has been a material change in a claimant's disability is an issue of fact, and the Commission's determination will not be overturned unless it is contrary to the manifest weight of the evidence. *Id.* For a finding of fact to be contrary to the weight of the evidence, an opposite conclusion must be clearly apparent. *Caterpillar, Inc. v. Industrial Comm'n*, 228 Ill. App. 3d 288, 291 (1992).

¶ 23    Here, we cannot find that an opposite conclusion from the Commission's is clearly apparent from the record. In its decision, the Commission pointed out that the claimant testified that his physical disability has been the same since the original arbitration hearing, that he has not sought any medical treatment since that time, and that he is under the same work restrictions. We also note that the claimant did not provide any evidence that there was a mental component to his claim or that his mental condition had changed whatsoever. The claimant's sole argument is that the City's refusal to offer him work within his restrictions has resulted in economic injuries. However, as we explained above, economic injuries do not fall within the ambit of the term "disability" as used in section 19(h). Because there is evidence in the record to support the Commission's finding that the claimant failed to prove that his physical or mental condition substantially and materially changed after the original arbitration hearing, we find that an opposite conclusion is not clearly apparent.

¶ 24    We next address the claimant's contention that the Commission erred in failing to award him maintenance and vocational rehabilitation benefits under section 8(a) of the Act (820 ILCS

305/8(a) (West 2014)). In his brief before this court, the claimant acknowledges that he cannot find any cases where maintenance and vocational rehabilitation benefits were available after a final award. He argues, however, that these benefits, like medical expenses, should remain available even after the entry of a final award.

¶ 25    The question of whether section 8(a) allows a claimant to seek maintenance and vocational rehabilitation benefits after a final award is a matter of statutory construction, which is a question of law. Issues of law are considered *de novo* on review without deference to the Commission's determination. *Elliott v. Industrial Comm'n*, 303 Ill. App. 3d 185, 187 (1999). Therefore, we review *de novo* whether section 8(a) allows a claimant to seek maintenance and vocational rehabilitation benefits after a final award.

¶ 26    Our supreme court has stated that the Commission is an administrative agency, lacking general or common law powers. *Cassens*, 218 Ill. 2d at 525. As a consequence, its powers are limited to those granted by the legislature and any action taken by the Commission must be specifically authorized by statute. *Id.* "An act that is unauthorized is beyond the scope of the agency's jurisdiction." *Id.*

¶ 27    As stated, the claimant argues that section 8(a) of the Act gives the Commission the authority to consider and address his request for maintenance and vocational rehabilitation benefits. Section 8(a) states, in relevant part, that an employer "shall *** pay for treatment, instruction and training necessary for the physical, mental and vocational rehabilitation of the employee, including all maintenance costs and expenses incidental thereto." 820 ILCS 305/8(a) (West 2014). However, we find that, while section 8(a) provides general authorization for the Commission to award maintenance and vocational rehabilitation benefits, it does not authorize the Commission to award these benefits after a final decision has been entered. That is, contrary

to the claimant's assertions, section 8(a) contains no specific language authorizing the claimant to file a petition seeking a modification of a final award, nor does it permit the Commission to address the issue of maintenance and vocational rehabilitation at any time and in any manner presented by the parties. Rather, the Commission's actions must be specifically and expressly provided for by the Act.

¶ 28 Section 19 of the Act (820 ILCS 305/19 (West 2014)) provides specific procedures for determining "[a]ny disputed questions of law or fact." Under that section, an arbitrator's decision becomes the conclusive decision of the Commission "[u]nless a petition for review is filed by either party within 30 days after the receipt" of the arbitrator's decision. 820 ILCS 305/19(b) (West 2014). "[T]he Commission may modify a conclusive decision only where the Act specifically authorizes it to do so." *Cassens*, 218 Ill. 2d at 525.

¶ 29 In *Cassens*, 218 Ill. 2d at 525, our supreme court discussed the limited circumstances under which the Act authorizes the Commission to modify or reopen a final award. In particular, the court noted that section 19(f) allows modifications to correct clerical errors, section 19(h) permits the Commission to reopen an installment award for a limited time, and section 8(f) allows the reassessment of any award for total and permanent disability. *Id*. at 526-27 (quoting 820 ILCS 305/19(f), 19(h), 8(f) (West 2002)). In finding that another section of the Act did not authorize the Commission to reopen a final award, the court noted as follows with respect to the aforementioned sections of the Act:

> "Each of these provisions includes language that is tailored to authorize a review proceeding. Section 19(f) specifically gives the arbitrator and Commission the power to recall an award. Section 19(h) allows either party to petition for review of an installment award within 30 months of its issuance. Section 8(f) indicates

that employers may cease payments when a totally and permanently disabled employee returns to the workforce, giving the employee authorization to petition the Commission for a review of the award. The plain language of each section alerts employers and employees to when review may be had and how to obtain it."

*Id*. at 527.

¶ 30 Here, the arbitrator issued her decision on January 22, 2014. Since neither party filed a petition for review of that decision, it became the conclusive decision of the Commission on February 22, 2014. In this case, none of the circumstances set forth in *Cassens* under which a conclusive decision of the Commission may be modified or reopened exists. Contrary to the claimant's assertions, section 8(a) does not contain any specific language authorizing a party to file a petition for review of a final award, as section 19(h) does. It does not authorize the Commission to recall an award, as section 19(f) does. Nor does it authorize a claimant to petition for review, as section 8(f) does. It would be inappropriate for us to read one of these procedures into section 8(a) when the legislature has included none of them in that section. Reading the Act as a whole, and following the reasoning in *Cassens*, we hold that section 8(a) does not authorize the Commission to address the issues of maintenance and vocational rehabilitation at any time after it has issued its final decision. Were we to adopt the claimant's position that section 8(a) allows the Commission to award maintenance and vocational rehabilitation benefits at any time, we would essentially render meaningless the requirements in section 19(h) that the claimant's disability "recurred, increased, diminished or ended" since the time of the original award. See *Cassens*, 228 Ill. 2d at 524 (when interpreting a statute, a court must avoid an interpretation that would render any portion of the statute meaningless or void).

Thus, the Commission does not have jurisdiction under section 8(a) to modify or reopen the claimant's final award.

¶ 31    In so holding, we note that we agree with the claimant's assertion that maintenance and vocational rehabilitation benefits may be available under section 19(h).  As this court stated in *Curtis v. Illinois Worker's Compensation Comm'n*, 2013 IL App (1st) 120976WC, ¶ 15, "when section 19(h) is read as a whole, it is clear that the legislature did not intend to limit the scope of section 19(h) to only permanency benefits.  Rather, the statute was meant to cover TTD benefits as well."  As a consequence, in order for the claimant to obtain maintenance and vocational rehabilitation benefits after a final award, he must satisfy the preliminary requirements of section 19(h) by showing a substantial and material change in his disability.  However, as we already discussed, the claimant failed to make this showing.

¶ 32    Finally, the claimant urges this court to interpret the Act as broadly as possible, given that it is a remedial statute intended to provide financial protection for injured workers.  See *Flynn v. Industrial Comm'n*, 211 Ill. 2d 546, 556 (2004).  According to the claimant, to deny maintenance and vocational rehabilitation benefits following a period of reduced earning capacity would frustrate the purpose of the Act.  However, as noted above, adopting the claimant's position would require us to read section 19(h) out of the Act.  While the result we reach may appear harsh to the claimant, we believe that it is a concern better addressed to the legislature.

¶ 33    In sum, because the claimant failed to show a material change in his physical or mental condition since the arbitrator's January 22, 2014, decision, the Commission properly denied his request for additional benefits under section 19(h) of the Act. We, therefore, affirm the judgment of the circuit court which confirmed the Commission's decision.

¶ 34    Affirmed.